PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JERRY FRANKS; LAVERNE COFIELD;
EASTON ACRES RESIDENTS
ASSOCIATION,

        *Plaintiffs-Appellants,*

        v.

WILLIAM G. ROSS, JR., Secretary for
the North Carolina Department of
Environment and Natural Resources,
in his official capacity; DEXTER
MATTHEWS, Director of Division of
Solid Waste Management, in his
official capacity; WAKE COUNTY;
WAKE COUNTY BOARD OF
COMMISSIONERS,

        *Defendants-Appellees.*

No. 01-2354

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief Judge.
(CA-00-936-5-BO)

Argued: June 3, 2002

Decided: December 4, 2002

Before MOTZ and KING, Circuit Judges, and
Robert R. BEEZER, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

Affirmed in part, reversed in part, and remanded by published opinion. Judge King wrote the opinion, in which Judge Motz and Senior Judge Beezer joined.

---

## COUNSEL

**ARGUED:** Marcus B. Jimison, Katherine Leigh Carpenter, LAND LOSS PREVENTION PROJECT, Durham, North Carolina, for Appellants. Michael R. Ferrell, Wake County Attorney, WAKE COUNTY ATTORNEY'S OFFICE, Raleigh, North Carolina; Lauren Murphy Clemmons, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Shelley Tager Easton, Deputy County Attorney, WAKE COUNTY ATTORNEY'S OFFICE, Raleigh, North Carolina; Roy Cooper, Attorney General, Nancy E. Scott, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees.

---

## OPINION

KING, Circuit Judge:

Plaintiffs Franks, Cofield, and the Easton Acres Residents Association (the "Plaintiffs") appeal from the district court's October 2001 decision dismissing their complaint. The Plaintiffs sought injunctive relief against the Wake County Board of Commissioners and Wake County (collectively, "Wake County" or the "County"), as well as from officials of the North Carolina Department of Environment and Natural Resources (the "DENR Defendants"), to halt the construction of a landfill in Holly Springs, North Carolina. The complaint alleged that the actions of Wake County and the DENR Defendants in connection with the landfill violated Title VI of the Civil Rights Act of 1964, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 1982, and the Equal Protection Clause of the Fourteenth Amendment. In addition, the Plaintiffs asserted a public policy challenge against the County, pursuant to N.C. Gen. Stat. § 14-234 (the "State Claim").

The district court dismissed as untimely the Plaintiffs' Title VI, § 1982, and Equal Protection claims against Wake County. The court also dismissed the State Claim and the Title VIII challenge for failure to state claims upon which relief could be granted. Finally, the court relied on Eleventh Amendment sovereign immunity to dismiss the Plaintiffs' claims against the DENR Defendants. In disposing of the case, the court also denied the Plaintiffs leave to amend their complaint for a second time. *Franks v. Ross*, No. 5:00-CV-936-BO(3), Order (E.D.N.C. Oct. 12, 2001) (the "Dismissal Order"). As explained below, we affirm the court's dismissal of the State Claim against Wake County. However, we reverse its dismissal of the Title VI, § 1982, and Equal Protection claims against the County.[1] Further, we conclude the court erred in refusing to authorize an amendment of the complaint and in determining that the DENR Defendants are entitled to immunity.

I.

A.

This proceeding arises from the efforts of Wake County to construct and operate a landfill in Holly Springs, North Carolina. These efforts have followed a tortured path, and they implicate issues of racial discrimination, conflicts of interest, administrative procedure, and the timeliness and ripeness of claims.

The small town of Holly Springs is home to the largest percentage of African Americans of any municipality in Wake County.[2] Despite having less than two percent of the County's population, this African-American community has long borne a disproportionate share of Wake County's landfills. In 1975, Wake County sited a 300-acre solid waste landfill in Feltonsville, a neighborhood adjoining Holly Springs. This landfill (the "Feltonsville Landfill") operated for over twenty years. Holly Springs itself is presently home to three other landfills.

---

[1]In their appeal, the Plaintiffs have not contested the dismissal of their Title VIII claim as to Wake County, and we do not address it here.

[2]Wake County encompasses the major municipality of Raleigh, the capital of the Tar Heel State.

In the early 1990s, Wake County decided to pursue the creation of a new landfill in Holly Springs, designated as the "South Wake Landfill." In February 1999, the DENR issued the County a permit authorizing construction of the South Wake Landfill (the "South Wake Permit" or the "Permit"). The Plaintiffs promptly challenged the issuance of the Permit in state administrative proceedings. Thereafter, in December 2000, they instituted this proceeding in the Eastern District of North Carolina, seeking injunctive relief against the County and the DENR to halt construction of the South Wake Landfill. When their claims were dismissed, the Plaintiffs filed this appeal. In our review of the dismissal, we are obliged to accept as true the facts alleged in the complaint.[3] Those facts are further reviewed in relevant part below.

### B.

The Plaintiffs allege that Wake County has long engaged in a pattern of intentional discrimination in the siting of undesirable landfills near predominantly African-American communities. They also assert that the DENR, "by approving and permitting sites for landfills . . . near Black neighborhoods and communities," has engaged in a similar pattern of discrimination. The DENR has permitted at least four other landfills in and around Holly Springs, "near areas primarily occupied by minorities," i.e., the Feltonsville Landfill, the Browning-Ferris Industries Landfill, the Cary Landfill, and the Holly Springs Landfill.

The siting and permitting of the landfill at issue here began in October 1990, when the Wake County Board of Commissioners decided to purchase additional property in order to expand the Feltonsville Landfill. One of the commissioners, a Mr. Adcock, voted in favor of the land purchase, despite the fact that he owned eighty-four acres of the land involved. On September 1, 1992, the Holly Springs Board of Commissioners adopted a resolution granting permission to the County to expand the Feltonsville Landfill. Once the County received that permission, it sought approval from the DENR. Prior to securing the DENR's approval, however, new state and fed-

---

[3]*Anita's N.M. Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.*, 201 F.3d 314, 316 (4th Cir. 2000).

eral environmental regulations came into effect. These regulations required all unlined landfills, such as the Feltonsville Landfill, to close by January 1, 1998. Upon learning that the Feltonsville Landfill would be forced to close, the County altered its proposed landfill project, abandoning the expansion plan for the Feltonsville Landfill in favor of the construction of an entirely new landfill. In December 1992, it submitted a site application plan to the DENR for the construction of the South Wake Landfill. If completed, the South Wake Landfill will spread across 471 acres, at a height of 280 feet.

On March 25, 1994, in the course of acquiring property on which to build the South Wake Landfill, the County condemned the eighty-four acre tract of land owned by Commissioner Adcock. On March 14, 1995, the DENR issued, pursuant to its regulations, a site suitability letter for the Landfill. This letter notified the County that the site was considered appropriate, and it authorized the County to apply to the DENR for a permit to construct the South Wake Landfill. On December 31, 1996, Wake County submitted to the DENR its application for a permit.

The Plaintiffs assert that "the defendants . . . pursued every route possible in order to prevent the plaintiffs from receiving adequate notice and participating in discussions regarding the landfill at a meaningful point in the process." Indeed, there was no public participation in the process until May 16, 1998, when the DENR, before ruling on the County's permit application, conducted a public hearing on the proposed South Wake Landfill. Three days after the hearing, the Holly Springs Board of Commissioners revoked its October 1992 resolution authorizing the County to expand the Feltonsville Landfill.[4] Thereafter, in September 1998, the DENR inquired of the County whether its construction of the South Wake Landfill would disparately impact minority communities. The County responded that there would be no such disparate impact. On February 18, 1999, the DENR issued the South Wake Permit, authorizing the County to construct the South Wake Landfill.

---

[4]While the Holly Springs Board of Commissioners had adopted its 1992 resolution granting the County permission to *expand* the Feltonsville Landfill, the Board has never approved construction of a *new* waste disposal facility, such as the South Wake Landfill.

C.

The Plaintiffs' challenges to the construction of the South Wake Landfill have travelled a complicated path; they are ongoing both in this Court and in the Court of Appeals of North Carolina. In March 1999, Plaintiff Franks filed a "contested case" petition with North Carolina's Office of Administrative Hearings, seeking both to set aside the DENR's issuance of the South Wake Permit and to enjoin Wake County from taking any action with regard to the South Wake Landfill.[5] An Administrative Law Judge (the "ALJ"), ruling on a summary judgment motion, concluded that Wake County had violated North Carolina law in the permitting process by, *inter alia*, failing to procure Holly Springs's permission to construct the new landfill and failing to comply with the mandate of N.C. Gen. Stat. § 153A-136(c). This statutory provision requires that a county board of commissioners, prior to selecting a new landfill site, consider alternative sites as well as socioeconomic and demographic data, and conduct a public hearing.[6] *Franks v. N.C. Dep't of Env't & Natural Res.*, 99 EHR

---

[5] When a North Carolina state agency and a "person" are unable to informally resolve a dispute between them, "either the agency or the person may commence an administrative proceeding to determine the person's rights, duties, or privileges, at which time the dispute becomes a 'contested case.'" N.C. Gen. Stat. § 150B-22. An Administrative Law Judge ("ALJ") then issues a recommended decision and transfers the case to the responsible agency for a final decision. *Id.* § 150B-34. The agency must issue its final decision within 90 days of receiving the official record; in the event it fails to meet the statutory deadline, a party may seek a court order declaring the ALJ's recommended decision the "final agency decision." *Id.* § 150B-44 (amended 2000). Once a final agency decision has been reached in a contested case, "any person who is aggrieved . . . is entitled to judicial review of the decision." *Id.* § 150B-43.

[6] On July 22, 1992, while Wake County was seeking to expand the Feltonsville Landfill, North Carolina enacted § 153A-136(c), which provides that a county board of commissioners shall:

consider alternative sites and socioeconomic and demographic data and shall hold a public hearing prior to selecting or approving a site for a new sanitary landfill that receives residential solid waste that is located within one mile of an existing sanitary landfill within the State.

0344, 380, Recommended Decision (Sept. 28, 1999) (the "Recommended Decision"). The Recommended Decision required the DENR to withdraw the South Wake Permit "until all procedural requirements are met." *Id.* at 22. In November 1999, the ALJ transferred the case to the DENR for a "final agency decision," pursuant to N.C. Gen. Stat. § 150B-34. After the DENR failed to render its decision within the ninety-day period mandated by the statute, Franks requested the Wake County Superior Court to declare the Recommended Decision to be the DENR's final agency decision. The Superior Court agreed with Franks and, on October 4, 2000, it concluded that the Recommended Decision constituted the DENR's final agency decision. *Franks v. N.C. Dep't of Env't & Natural Res.*, 00 CVS 3742, Order (Wake County Super. Ct. Oct. 4, 2000).

Wake County then initiated a separate proceeding in Wake County Superior Court, pursuant to N.C. Gen. Stat. § 150B-43, appealing the DENR's final agency decision, which revoked the South Wake Permit. That court, on March 16, 2001, reversed the DENR's final agency decision, and it ordered the DENR to reissue the Permit. *County of Wake v. N.C. Dep't of Env't & Natural Res.*, 00 CVS 11760, Petitioner's Proposed Order (entered by Wake County Super. Ct. Mar. 16, 2001) (the "Permit Reissuance Decision"). Franks then appealed the Permit Reissuance Decision to the Court of Appeals of North Carolina, where it is presently pending. The appeal was heard by the Court of Appeals on April 17, 2002, and the issues before the court include, *inter alia*, the applicability of § 153A-136(c) to the South Wake Landfill dispute, as well as whether Holly Springs was entitled to withdraw its 1992 approval of the expansion of the Feltonsville Landfill.

---

N.C. Gen. Stat. § 153A-136(c). Prior to submitting its permit application for the South Wake Landfill to the DENR in 1996, Wake County failed to conduct a public hearing to inform the residents of Holly Springs of the County's original plan to expand the Feltonsville Landfill, or of its plan to build the South Wake Landfill. The applicability of § 153A-136(c) to the South Wake Landfill is disputed by the parties, and application of the statute is a primary issue being litigated in the ongoing state proceedings.

### D.

On December 21, 2000, after the South Wake Permit had been revoked and while the Superior Court's review of the DENR's "final agency decision" was pending, the Plaintiffs filed suit against the County and the DENR in the Eastern District of North Carolina, seeking to enjoin the entire South Wake Landfill process. In their initial complaint, the Plaintiffs maintained that the siting of the South Wake Landfill violated Title VI,[7] Title VIII,[8] § 1982,[9] and the Equal Protection Clause. In addition, the complaint asserted the State Claim, maintaining that Commissioner Adcock had violated North Carolina public policy, specifically N.C. Gen. Stat. § 14 234, by participating in the siting of the South Wake Landfill on his own land, rendering the condemnation transaction void. By their complaint, the Plaintiffs requested the court to declare the siting, approval, and funding of the South Wake Landfill to be illegal, and they further requested that the court "[e]njoin Defendants from constructing, operating, and/or maintaining the South Wake Landfill." After Wake County and the DENR separately moved to dismiss the complaint for want of jurisdiction and for failure to assert any claims upon which relief could be granted, the Plaintiffs amended their complaint, dismissing their claims against the DENR itself and naming instead the DENR Defendants (the "First Amended Complaint").[10] On May 29, 2001, the

---

[7]The pertinent part of Title VI is codified at 42 U.S.C. § 2000d and provides that "[n]o person in the United States shall, on the ground of race . . . be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

[8]The relevant section of Title VIII is codified at 42 U.S.C. § 3604(b) and provides that it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of race." 42 U.S.C. § 3604(b).

[9]Pursuant to § 1982 of Title 42 of the United States Code "[a]ll citizens . . . have the same right, in every State . . . , as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982.

[10]The First Amended Complaint was filed on February 26, 2001, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, and it named DENR Secretary William G. Ross, Jr., and a DENR Director, William Meyer, as defendants in their official capacities. Subsequently, Dexter Matthews replaced Mr. Meyer as Director, and he is now a defendant. Thereafter, on March 8, 2001, the Plaintiffs dismissed their claims against the DENR without prejudice.

Plaintiffs requested leave to amend a second time, seeking to file their "Second Amended Complaint," in order to respond to the Permit Reissuance Decision and to assert a claim under 42 U.S.C. § 1983. The court, however, by its Order of October 12, 2001, denied the motion to amend, concluding that the amendment would "clearly prejudice" the DENR Defendants. Dismissal Order at 11.

The Dismissal Order also granted the motions of Wake County and the DENR Defendants to dismiss the First Amended Complaint. The court concluded that the Title VI, § 1982, and Equal Protection claims against Wake County were barred by North Carolina's three year statute of limitations. *Id.* at 5-7. In addition, the court ruled that both the State Claim and the Title VIII challenge against the County failed to pass muster under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Id.* at 7-9. The court further determined that the DENR Defendants were entitled to sovereign immunity, and it dismissed the claims asserted against them. *Id.* at 9-11. The Plaintiffs appeal, contending that the court erred in dismissing their claims and that it abused its discretion in declining to grant them leave to file their Second Amended Complaint. We possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

### A.

The Plaintiffs raise three primary contentions in their appeal. First, they assert that the court abused its discretion in refusing to grant them leave to amend. Second, they maintain that the district court improperly dismissed their claims against Wake County. And third, they contend that the DENR Defendants are not entitled to sovereign immunity. We begin our analysis of the issues by explaining the applicable standards of review.

### B.

First, we review for abuse of discretion the denial of a motion for leave to amend a complaint. *HCMF Corp. v. Allen*, 238 F.3d 273, 276-77 (4th Cir. 2001). Under Rule 15(a), which governs such

requests, leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

In certain situations we review de novo a district court's dismissal of a claim on statute of limitations grounds. *United States v. United Med. and Surgical Supply Corp.*, 989 F.2d 1390 (4th Cir. 1993). Where, as here, the challenge is not to the existence of certain facts, but instead rests on "whether those facts demonstrate a failure [to bring a timely claim,] resolution . . . turns on questions of law which are reviewed de novo." *Id.* at 1398.

We likewise review de novo the dismissal of a complaint for failure to state a claim upon which relief could be granted. *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). Such a motion to dismiss, made under Rule 12(b)(6), "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In considering such a motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Id.*

Finally, the existence of sovereign immunity is a question of law that we review de novo. *Research Triangle Inst. v. Bd. of Governors of the Fed. Reserve Sys.*, 132 F.3d 985, 987 (4th Cir. 1997). In addition, we review de novo a "district court's legal determination [of] whether *Ex parte Young* relief is available." *CSX Transp., Inc. v. Bd. of Pub. Works of W. Va.*, 138 F.3d 537, 541 (4th Cir. 1998).

We address each of the Plaintiffs' contentions in turn.

### III.

### A.

We first consider the Plaintiffs assertion that the district court erred in refusing to permit the filing of their Second Amended Complaint. Although we review the denial of a motion to amend for abuse of discretion, a court abuses its discretion "by resting its decision on a

clearly erroneous finding of a material fact." *Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75, 78 (4th Cir. 1989) (internal quotation and citation omitted). As explained below, the court's conclusion that the defendants would be clearly prejudiced was based on an error of material fact.

On May 29, 2001, the Plaintiffs sought leave to file their Second Amended Complaint, in order to respond to the Superior Court's Permit Reissuance Decision and to add a § 1983 claim. In their proposed Second Amended Complaint, the Plaintiffs sought to request the district court to "order [the DENR Defendants] to revoke and withdraw the permit for the South Wake Landfill." The court declined to grant leave to amend, however, on the ground that the amendment would "clearly prejudice" the DENR Defendants. Dismissal Order at 11. The court based this conclusion on its mistaken belief that the Plaintiffs had not sought leave to amend until "nearly seven months" after the Permit Reissuance Decision. *Id.* Specifically, the court believed that the Superior Court had issued its decision on October 4, 2000, and that the Plaintiffs had not sought leave to amend until April 27, 2001.[11] *Id.* In fact, however, the Superior Court had issued its Permit Reissuance Decision on March 16, 2001, rather than on October 4, 2000, and the Plaintiffs had filed their motion to amend on May 29, 2001. Thus, contrary to the district court's understanding, the Plaintiffs had not waited seven months to seek to amend their complaint, but they had instead sought such leave less than three months after the Permit Reissuance Decision.

Under the applicable Rule, "leave [to amend a complaint] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In fact, such leave "should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (emphasis in original) (internal quotation and citation omitted). In these circum-

---

[11]On October 4, 2000, the Superior Court entered its Order deciding that the Recommended Decision of the ALJ (revoking the DENR's issuance of the South Wake Permit) constituted the final agency decision of the DENR. The Permit Reissuance Decision was rendered in a separate proceeding five months later.

stances, the filing of the Second Amended Complaint, less than three months after entry of the Permit Reissuance Decision, could hardly have prejudiced the defendants. And in light of the significance of the Permit Reissuance Decision, the filing of the Second Amended Complaint should have been authorized. As Judge Ervin properly observed in *Quince Orchard*, *supra*, a decision premised on a "clearly erroneous finding of material fact" constitutes an abuse of discretion.[12] 872 F.2d at 78.

### B.

In dismissing the Plaintiffs' claims against Wake County, the district court concluded that the Plaintiffs' Title VI, § 1982 and Equal Protection claims (the "Federal Claims") were filed in an untimely manner. It then decided that the State Claim failed to pass muster under Rule 12(b)(6). In determining the propriety of the court's dismissal of these claims against Wake County, we first assess the statute of limitations issue.

### 1.

In December 2000, the Plaintiffs filed their initial complaint against Wake County. The court concluded that North Carolina's three-year statute of limitations, found in N.C. Gen. Stat. § 1-52(16), applied to the Federal Claims, and that the limitations period began to run in either 1991 or 1992, "when the County made the decision to site the landfill and began to purchase property." Dismissal Order at 6. Because the Plaintiffs filed their Federal Claims more than eight years later, the court found those claims to be untimely. While the court correctly identified the applicable limitations period, it erred in concluding that the period started to run in 1991 or 1992.

First of all, the predicate bases for the Federal Claims do not contain an explicit limitations period. The Federal Claims are accordingly governed by the limitations period of the most analogous state stat-

---

[12]Wake County and the DENR Defendants contend that, in any event, the court's refusal to authorize the amendment should be affirmed because it would have been futile. This Court, however, is ill-suited to decide a claim of futility not addressed by the district court.

utes. As Chief Judge Wilkinson explained in *Jersey Heights Neighborhood Association v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999), "the personal nature of the right against discrimination justifies applying the state personal injury limitations period." In this instance, the district court correctly concluded that the applicable statute of limitations for personal injury actions in North Carolina is three years. N.C. Gen. Stat. § 1-52(16).

The question of when a statute of limitations is triggered is one of federal law. As the Third Circuit has observed, a cause of action accrues for purposes of the statute of limitations "when it is sufficiently ripe that one can maintain suit on it." *Whittle v. Local 641, Int'l Bhd. of Teamsters*, 56 F.3d 487, 489 (3d Cir. 1995); *see also Bell v. Aerodex*, 473 F.2d 869 (5th Cir. 1973) ("[A] cause of action accrues when the plaintiff could first have successfully maintained a suit based on that cause of action."); *Skyberg v. United Food & Commercial Works Int'l Union*, 5 F.3d 297, 301 (8th Cir. 1993) (same); *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 163 (2d Cir. 1989) (same). Wake County contends that the limitations period began to run "at the latest by the time Wake County submitted its site plan application to the DENR in December, 1992." The Plaintiffs, by contrast, maintain that the period was not triggered until the DENR issued the South Wake Permit on February 18, 1999, which authorized the construction of the South Wake Landfill.

Put simply, the applicable statute of limitations could not have been triggered in either 1991 or 1992, because the Plaintiffs' claims would not then have been ripe for determination. *See Whittle*, 56 F.3d at 489. In evaluating the ripeness of claims for judicial review, courts must balance "the 'fitness of the issues for judicial decision' and the 'hardship to the parties of withholding court consideration.'" *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). As our Judge Russell properly explained, "[a] case is fit for judicial decision . . . where the agency rule or action giving rise to the controversy is final and not dependent upon future uncertainties or intervening agency rulings." *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992) (citing *Abbott Labs.*, 387 U.S. at 149). Therefore, in assessing when the limitations period was triggered in

this dispute, we must first ascertain when the final agency action occurred that gave rise to this controversy.

The permitting process for the South Wake Landfill involved two essential steps: (1) the actions of the County in siting the Landfill and acquiring property; and (2) the approval of the DENR, in the form of its site suitability letter and its issuance of the Permit on February 18, 1999. As we have discussed, *supra* at 4-5, Wake County and the DENR had an interwoven involvement in the permitting process over an extended period. As such, the participation of the County and the DENR are properly viewed as two parts of a single permitting process. This controversy was not ripe for judicial review until the completion of the final step of the process, i.e., the DENR's issuance of the South Wake Permit. *See New Hanover Township v. U.S. Army Corps of Eng'rs*, 992 F.2d 470 (3d Cir. 1993) (concluding that the challenge to defendant's issuance of a general permit to landfill corporation was not ripe for review because corporation needed further approval from state agency prior to proceeding with landfill project). Indeed, it would have been premature for the Plaintiffs to file their complaint in the early 1990s, or at any time prior to the DENR's issuance of the South Wake Permit in 1999. Had the DENR declined to issue the Permit, the South Wake Landfill project could not have gone forward, and the district court would have been unnecessarily entangled in what the Supreme Court has aptly labeled an "abstract disagreement[ ]." *Abbott Labs.*, 387 U.S. at 148.

The parties disagree on the significance to this appeal of our handling of a statute of limitations issue in *Jersey Heights Neighborhood Association v. Glendening*, 174 F.3d 180 (4th Cir. 1999). In that situation, African-American residents of Maryland challenged the routing of a proposed highway bypass. The Maryland State Highway Administration had studied alternate routes, and in May 1989 it issued its Final Environmental Impact Statement, recommending the challenged route. In August 1989, the Federal Highway Administration issued its Record of Decision ("ROD") approving the proposed routing. We concluded that the statute of limitations was triggered by the issuance of the ROD, despite the fact that the bypass required additional permits, because on the "fundamental question of where the highway would be located, the ROD . . . signaled the end of the decisionmaking process." *Id.* at 186. Further, we found ripeness as of the issuance

of the ROD because "there was no obvious factual contingency that put construction seriously in doubt." *Id.* at 188.

In this case, by contrast, the County's siting of the Landfill was a preliminary step; there remained several obvious factual contingencies that put the Landfill's construction in serious doubt. Before granting its approval for the Landfill, the DENR was required to follow additional procedural steps and to consider numerous relevant factors, including whether the Landfill would disparately impact minority communities. The siting of the Landfill did not conclude the decisionmaking process on the project. Thus, a challenge to the Landfill was not ripe for review, and the statute of limitations did not begin to run, until the DENR issued the South Wake Permit on February 18, 1999.[13] While the siting decisional process in *Jersey Heights* ended with the ROD, this process carried through to the issuance of the South Wake Permit. Thus, it is with the issuance of that Permit that the statute of limitations began to run. *See Whittle*, 56 F.3d at 489 (concluding that limitations period commences to run when claim is sufficiently ripe to bring cause of action).

In sum, the Federal Claims against Wake County became ripe for review on February 18, 1999, when the DENR issued the South Wake Permit, and the Plaintiffs were entitled to assert their claims within three years of that date. They filed their complaint less than three years later, on December 21, 2000, and hence it was timely. Thus, the court erred in dismissing the Federal Claims against Wake County on statute of limitations grounds.

---

[13]The Eleventh Circuit, in a decision relied on by the Defendants, concluded that an applicable statute of limitations was triggered when a county board selected a landfill site, rather than when a state environmental agency issued its permit. *Rozar v. Mullis*, 85 F.3d 556 (11th Cir. 1996). The court viewed its proper focus as "the time of the discriminatory act" rather than when "the consequences of the act become painful." *Id.* at 563. Our analysis differs from *Rozar* because the discriminatory act that is under review must be the final siting approval, not just the siting vote, in line with the requirement that there be "no obvious factual contingency" that puts a particular injury in doubt. *Jersey Heights*, 174 F.3d at 188.

2.

The Plaintiffs also contest the district court's dismissal of the State Claim, which charged Wake County with contravening North Carolina public policy. The Plaintiffs alleged that, in Wake County's effort to acquire land to expand the Feltonsville Landfill, Commissioner Adcock "participated in the discussion and seconded the purchase of property even though his wife and he owned 84 acres that would . . . be purchased for the landfill expansion." In March 1994, the County condemned the eighty-four acres owned by Commissioner Adcock for use in the South Wake Landfill, and Adcock received a judgment against the County for over $400,000. The Plaintiffs maintain that this transaction violated North Carolina public policy, specifically N.C. Gen. Stat. § 14-234, which prohibits county commissioners from receiving profits by entering into contracts with their county.[14] The district court dismissed the State Claim, concluding that, while § 14-234 prohibits *contracts* between a commissioner and his county, Commissioner Adcock's profit resulted not from a contract, but rather from a land condemnation. Dismissal Order at 8-9.

We agree with the district court that § 14-234 speaks of contracts, and that it does not specifically prohibit a commissioner from profiting from the condemnation of his land. While we are troubled by the allegations surrounding Commissioner Adcock's conduct, the revision of North Carolina's public policy is not within our bailiwick. As such, the court did not err in dismissing the State Claim.

C.

Finally, we turn to the Plaintiffs' claims against the DENR Defendants, which the district court dismissed upon concluding that they

---

[14]Section 14-234 of the General Statutes of North Carolina provides in relevant part that:

> [i]f any . . . commissioner [of] . . . any county . . . make[s] any contract for his own benefit, under such authority, or be in any manner concerned or interested in making such contract, or in the profits thereof, . . . he shall be guilty of a misdemeanor.

N.C. Gen. Stat. § 14-234.

were entitled to sovereign immunity under the Eleventh Amendment. In so ruling, the court rejected the Plaintiffs' contention that the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), provided an exception to sovereign immunity in this case. Dismissal Order at 10.

It is established that sovereign immunity protects a state from being sued by one of its own citizens without its consent. *Alden v. Maine*, 527 U.S. 706, 727-28 (1999). The long-standing doctrine of *Ex parte Young*, however, "allows private citizens, in proper cases, to petition a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the Constitution or a federal statute." *Antrican v. Odom*, 290 F.3d 178, 184 (4th Cir. 2002). Specifically, *Ex parte Young* authorizes "suits against state officers for prospective equitable relief from ongoing violations of federal law." *Lytle v. Griffith*, 240 F.3d 404, 408 (4th Cir. 2001). To determine whether the *Ex parte Young* doctrine is applicable, as the Supreme Court recently observed, a court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, ___ U.S. ___, 122 S. Ct. 1753, 1760 (2002) (internal quotation and citation omitted).

In their First Amended Complaint, the Plaintiffs repeatedly request injunctive relief against the DENR Defendants. They specifically seek, for example, "declaratory and injunctive relief against the North Carolina Department of Environment and Natural Resources and the Wake County Board of Commissioners." Further, they request that the court "[e]njoin Defendants from constructing, operating and/or maintaining the South Wake Landfill on the site which is the subject of this lawsuit." The court concluded, however, that these allegations fail to satisfy *Ex parte Young* because, when the Plaintiffs filed their First Amended Complaint on February 26, 2001, naming the DENR Defendants, the South Wake Permit had been revoked by the Superior Court's October 4, 2000, decision. Dismissal Order at 10; *see Franks v. N.C. Dep't of Env't & Natural Res.*, 00 CVS 3742, Order (Wake County Super. Ct. Oct. 4, 2000) (making Recommended Decision the final agency decision of the DENR). Although the South Wake Permit had been reissued and was viable on October 12, 2001 (when the court refused to authorize the filing of the Second Amended Com-

plaint), the court nonetheless concluded that the absence of a valid landfill permit on February 26, 2001, when the Plaintiffs filed their First Amended Complaint, left nothing to be enjoined. Dismissal Order at 10. As an additional rationale, the court noted that the Plaintiffs sought to enjoin the construction, operation, and maintenance of the South Wake Landfill, but that the DENR has no responsibility for such things and hence could not be enjoined from doing them. *Id.* at 5 n.4.

First, the district court incorrectly concluded that *Ex parte Young* does not apply here. The court determined that, because the South Wake Permit had been revoked by the Superior Court when the First Amended Complaint was filed, there was no ongoing violation of federal law to be enjoined. As discussed above, the Plaintiffs requested leave to amend in order to respond to the reissuance of the South Wake Permit, and when the court entered its Dismissal Order on October 12, 2001, the South Wake Permit was viable. Regardless of whether the court correctly concluded that the First Amended Complaint did not allege an ongoing violation of federal law, the allegations in the Second Amended Complaint should have been considered in determining whether there was a jurisdictional defect. *See* Fed. R. Civ. P. 15(d); *Rowe v. United States Fid. & Guar. Co.*, 421 F.2d 937 (4th Cir. 1970) (explaining propriety of allowing supplemental pleading under Rule 15(d) to cure a defect in the initial complaint).

Under Rule 15(d), a party may supplement its complaint "even though the original pleading is defective in its statement of a claim for relief or defense."[15] *Id.* Various courts have concluded that "re-

[15]A supplemental pleading differs from an amended pleading because it relates to matters occurring subsequent to the filing of the initial complaint. Fed. R. Civ. P. 15(d). To the extent that the Second Amended Complaint responds to the Permit Reissuance Decision, it constituted a supplemental pleading. This distinction is of little practical significance, however, because the standards used by a district court in ruling on a motion to amend or on a motion to supplement are nearly identical. In either situation, leave should be freely granted, and should be denied only where "good reason exists . . . , such as prejudice to the defendants." *Walker v. United Parcel Serv.*, 240 F.3d 1268, 1278 (10th Cir. 2001) (internal quotation and citation omitted); *see also Bates v. W. Elec.*, 420

quiring [a] plaintiff to go through the needless formality and expense of instituting a new action when events occurring after the original filing indicated he had a right to relief [is] inconsistent with the philosophy of the federal rules." 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1505 (2d ed. 1990) (citing cases). For example, in *Security Insurance Co. of New Haven, Connecticut v. United States ex rel. Haydis*, 338 F.2d 444 (9th Cir. 1964), the plaintiff filed his complaint prior to a mandatory ninety-day waiting period required by law. He then filed a supplemental pleading, more than a year later, after the statute of limitations had expired. The defendants contended, alternatively, that the supplemental pleading was time-barred or, if it was found to relate back, the complaint was filed prematurely. *Id.* at 444. The court, viewing this argument as absurd, observed that "[n]othing but the most compelling authority . . . would induce us to stay on this legal merry-go-round." *Id.*

Indeed, the filing of a supplemental pleading is an appropriate mechanism for curing numerous possible defects in a complaint. *See Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286 (8th Cir. 1988) (concluding that the plaintiff's amended complaint cured ripeness defect in original complaint); *Lyman v. Livingston*, 257 F. Supp. 520, 525 (D. Del. 1966) (explaining that plaintiff was entitled to supplement complaint to demonstrate that she had made mandatory demand upon corporation and thereby had standing to bring stockholder derivative suit); *Ridgeway v. Int'l Bhd. of Elec. Workers*, 466 F. Supp. 595 (N.D. Ill. 1979) (allowing amendment to add party in order to cure defect in Title VII claim); *Bates v. W. Elec.*, 420 F. Supp. 521 (E.D. Pa. 1976) (permitting plaintiffs to file amended complaint to demonstrate that, subsequent to filing of initial complaint, they complied with jurisdictional prerequisites of Title VII).

Even assuming, as the district court found, that the First Amended Complaint did not allege an ongoing violation of federal law, the

---

F. Supp. 521 (E.D. Pa. 1976). In addition, we review both a denial of leave to amend and a denial for leave to supplement for abuse of discretion. *See Rowe v. United States Fid. & Guar. Co.*, 421 F.2d 937 (4th Cir. 1970); *Edwards v. City of Goldsboro*, 178 F.3d at 242; *see also Burns v. Exxon Corp.*, 158 F.3d 336 (5th Cir. 1998).

Plaintiffs alleged an ongoing violation, as required by *Ex parte Young*, in their Second Amended Complaint. As we discussed earlier, *supra* at 10-12, the court should have authorized the filing of the Second Amended Complaint. And had it been filed, it would have resolved any potential Eleventh Amendment issue. Under the Second Amended Complaint, the Plaintiffs appropriately sought prospective injunctive relief against the DENR Defendants, and the court improperly dismissed the claims against them.

Second, we are unable to accept the district court's conclusion that the *Ex parte Young* doctrine does not apply to the DENR Defendants because the Plaintiffs sought only to enjoin the construction, operation, and maintenance of the South Wake Landfill. While the DENR itself would not be "constructing, operating, and/or maintaining the South Wake Landfill," the Plaintiffs were not required to present a perfectly drafted complaint in order to survive a motion to dismiss. *See Anderson v. Found. for Advancement, Educ. & Employment of Amer. Indians*, 155 F.3d 500, 505 (4th Cir. 1998) (explaining that notice pleading requires a complaint to be read liberally in favor of the plaintiff); *see also* Fed R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice."). Of course, the Plaintiffs were obliged to give notice to the defendants that they sought to enjoin the DENR Defendants' involvement in the South Wake Landfill. And they fulfilled that obligation by asserting that "[t]his action challenges defendants' *approval*, funding and construction of a landfill in plaintiffs' community . . . [and] [p]laintiffs seek declaratory and injunctive relief against the North Carolina Department of Environment and Natural Resources." (emphasis added). In these circumstances, the Plaintiffs adequately pleaded their request for injunctive relief against the DENR Defendants. *Cf. Martin v. Deiriggi*, 985 F.2d 129, 135 (4th Cir. 1993) (concluding that plaintiff placed defendant on notice of liquidated damages claim because "[t]he six page complaint at issue here discussed liquidated damages in two different paragraphs").

This case is not unique: the DENR Defendants are state officials of North Carolina, acting in their official capacities. The Plaintiffs simply seek to enjoin them from engaging in what are alleged to be ongoing violations of federal law. The Plaintiffs adequately asserted claims for injunctive relief against the DENR Defendants under *Ex parte Young*, and the court erred in dismissing those claims.

## IV.

Pursuant to the foregoing, we reverse the district court's denial of leave to file the Second Amended Complaint, its dismissal of the Federal Claims against Wake County, and its award of sovereign immunity to the DENR Defendants. We affirm its dismissal of the State Claim against Wake County, and we remand for such further proceedings as may be appropriate.[16]

*AFFIRMED IN PART, REVERSED*
*IN PART, AND REMANDED*

---

[16]We leave to the parties and the district court any issue of whether abstention may be appropriate in the circumstances presented here.