UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JAMES J. HAYES; THOMAS BOOTS, on
behalf of themselves and all others
similarly situated,
              *Plaintiffs-Appellants,*

              v.

CROWN CENTRAL PETROLEUM
CORPORATION; MICHAEL F. DACEY;
STANLEY A. HOFFBERGER; BARRY L.
MILLER; HENRY A. ROSENBERG, JR.;
JOHN E. WHEELER, JR.; JACK AFRICK;
HAROLD RIDLEY; CREDIT SUISSE FIRST
BOSTON CORPORATION; ROSEMORE,
INCORPORATED; FRANK B. ROSENBERG,
              *Defendants-Appellees.*

No. 02-2190

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-02-122-A)

Argued: May 6, 2003

Decided: October 17, 2003

Before LUTTIG, MOTZ, and SHEDD, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

**COUNSEL**

**ARGUED:** Edward M. Selfe, BRADLEY, ARANT, ROSE & WHITE, L.L.P., Birmingham, Alabama, for Appellants. Anne Marie Whittemore, MCGUIREWOODS, L.L.P., Richmond, Virginia; Jonathan Lee Greenblatt, SHEARMAN & STERLING, Washington, D.C., for Appellees. **ON BRIEF:** John F. Goodman, BRADLEY, ARANT, ROSE & WHITE, L.L.P., Birmingham, Alabama; Michael Straus, Mark J. Schirmer, STRAUS & BOIES, L.L.P., Birmingham, Alabama, for Appellants. Elizabeth F. Edwards, MCGUIREWOODS, L.L.P., Richmond, Virginia; Neil H. Koslowe, Suzanne Miller Trinh, SHEARMAN & STERLING, Washington, D.C.; Lawrence Portnoy, Kimberley D. Harris, DAVIS, POLK & WARDWELL, New York, New York; Robert S. Bennett, Richard L. Brusca, Mary L. Smith, SKADDEN, ARPS, MEAGHER, SLATE & FLOM, L.L.P., Washington, D.C.; Amy Berman Jackson, John Thorpe Richards, Jr., TROUT & RICHARDS, P.L.L.C., Washington, D.C., for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Former shareholders of Crown Central Petroleum Corporation ("Crown") brought a class action against Crown; members of Crown's Board of Directors; Rosemore, Inc. ("Rosemore"); and Credit Suisse First Boston Corporation ("CSFB"), alleging violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 ("the Act") and Maryland state law. The district court granted the defendants' motion to dismiss, and the plaintiffs appeal. For the reasons set forth below, we affirm in part, vacate in part, and remand for proceedings consistent with this opinion.

I.

In February 1999, Crown, a refiner and marketer of petroleum products, retained CSFB as a financial advisor and announced that it

was exploring strategic alternatives. At the recommendation of CSFB, Crown elected to pursue the sale or merger of Crown as a whole or the sale of its refining assets. In January 2000, Rosemore, Crown's largest shareholder, expressed interest in purchasing Crown. At that time, Henry Rosenberg, Jr. served as Chairman, President, and Chief Executive Officer of Crown as well as Chairman of the Board of Rosemore. The directors of Crown, other than Rosenberg, subsequently constituted themselves as an independent committee that would consider offers to purchase Crown. The independent committee agreed to pay CSFB a $3.27 million fee, of which $1.5 million was contingent upon the completion of a purchase deal with Rosemore.

In April 2000, Rosemore proposed to enter into a cash-out merger with Crown pursuant to which the public shareholders of Crown would receive $9.50 per share, and CSFB rendered an opinion that this offer was fair to the shareholders. The independent committee, and the Board of Directors thereafter, approved the merger. Before a shareholder vote could be taken on the Rosemore proposal, APEX Oil Company, a privately owned entity of the Novelly Group ("Novelly"), proposed a stock-for-stock merger valued at $10.50 per share. In the wake of the APEX offer, Crown's shareholders defeated the Rosemore proposal.

After the failed merger attempt, Rosemore and Novelly entered into negotiations for the sale of Novelly's stock to Rosemore, and Rosemore again sought a merger with Crown. An agreement was reached in which Novelly would vote its Crown shares in favor of the Crown and Rosemore merger, and, in return, Rosemore would pay $10.50 per share to all shareholders plus an additional $1.75 million to Novelly for the expenses incurred during its pursuit of Crown.

On December 14, 2000, Crown held its annual shareholder meeting and elected a new Board of Directors, all of whom are named defendants. Immediately following the meeting, the Board of Directors met and appointed three of its members as the new independent committee. On December 16, 2000, CSFB presented an oral opinion to the independent committee, subsequently confirmed in writing, that the offer of $10.50 per share was fair to Crown shareholders. CSFB specifically noted that it had not performed, and had not been asked to

perform, a liquidation value of Crown. CSFB stated, however, that it did not believe that this liquidation value would produce a greater value for shareholders than the proposed merger with Rosemore. At the conclusion of the meeting, the independent committee voted to recommend the Rosemore proposal to the Crown Board of Directors. The independent committee also recommended that the merger receive a majority of the votes cast, excluding those of Rosemore and its affiliates. The Novelly Group votes, however, already pledged to vote in favor of the merger, were not to be considered as Rosemore votes. Subsequently, the Crown Board of Directors voted unanimously to approve the merger.

Crown prepared a proxy statement, which relied upon the CSFB report, asserting that the terms of the merger were fair to, and in the best interests of, Crown's public shareholders. The proxy statement, dated January 31, 2001, and mailed to shareholders on or about February 2, 2001, set forth various indicators of Crown's economic health. For example, the proxy statement included information on an industry refining margin known as the Gulf Coast 20-day delayed 3/2/1 crack spread. A positive crack spread indicates that the value of refined products is more than the cost of the crude oil used to produce it. Conversely, a negative crack spread indicates that the value of the refined products is less than the cost of the crude oil, resulting in losses to refiners such as Crown. The proxy statement asserted that the crack spread fell from an average of $4.89 per barrel for the first eleven months of 2000 to a negative $1.68 per barrel in December 2000. The statement noted, however, that the crack spread was expected to be approximately $4.85 per barrel for the first six months of 2001.

The proxy statement also set forth a selected companies analysis performed by CSFB that utilized financial, operating and stock market data of other petroleum refiners and marketers to estimate the value of Crown stock. The equity market value of these companies was calculated as multiples of their estimated earnings before interest, taxes, depreciation, and amortization ("EBITDA") for calendar years 2000 and 2001. According to the proxy statement, CSFB applied these multiples to Crown's 2000 and 2001 EBITDA and to Crown's 1997-1999 average EBITDA to approximate the share price of Crown stock and calculated a reference range of $4.28 to $7.79 per share.

In addition, the proxy statement included a valuation of Crown's refineries based upon recent industry transactions involving comparable refineries; a statement regarding the settlement of a labor dispute; information regarding the termination of Crown's contract with Statoil Marketing and Trading, Inc. ("Statoil"); and a statement that Crown did not have plans to sell material amounts of its assets.

On March 7, 2001, Crown shareholders approved the merger by the requisite margin. The plaintiffs subsequently brought this class action, alleging (1) that Crown and the individual members of the Board of Directors issued a proxy statement containing false or misleading statements of material facts or omitting material facts, in violation of Section 14(a) of the Act; (2) that Crown, the individual members of the Board of Directors, and CSFB knowingly issued a false statement of opinion in the proxy statement, in violation of Section 14(a) of the Act; (3) that Crown, the individual members of the Board of Directors, and CSFB issued a false statement of opinion that they should have known was false, in violation of Section 14(a) of the Act; and (4) that Rosemore and Henry Rosenberg, Jr. were controlling persons under Section 20(a) of the Act. The plaintiffs also asserted a claim under Maryland law, alleging that Rosemore and the individual members of the Crown Board breached a fiduciary duty owed to Crown shareholders and that CSFB aided and abetted the directors' breach. As to all of the claims, the plaintiffs excluded any allegations of fraudulent conduct. The district court granted the defendants' motion to dismiss all claims, and this appeal followed.

II.

We review *de novo* the dismissal of claims pursuant to Fed. R. Civ. P. 12(b)(6). *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002). A motion to dismiss should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support its claim and entitle it to relief, and the complaint should be viewed in the light most favorable to the plaintiff. *Id.* To survive a motion to dismiss a securities fraud complaint, a plaintiff must also comply with the heightened pleading requirements imposed by the Private Securities Litigation Reform Act ("PSLRA"). Specifically, the PSLRA requires that:

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1). In any action requiring proof that the defendant acted with a particular state of mind, the facts alleged must give rise "to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). If the complaint does not meet these pleading requirements, the district court "shall, on the motion of any defendant, dismiss the complaint." 15 U.S.C. § 78u-4(b)(3)(A).

Section 14(a) of the Act makes unlawful the solicitation of a proxy regarding any security, by way of interstate commerce, in contravention of the rules and regulations prescribed by the Securities and Exchange Commission ("SEC"). 15 U.S.C. § 78n(a). Of relevance here, SEC Rule 14a-9 prohibits false or misleading statements with respect to material facts as well as the omission of material facts necessary to make the statements therein not false or misleading. 17 C.F.R. § 240.14a-9. To prevail in a private cause of action asserting a violation of Rule 14a-9, a plaintiff must show that (1) the proxy statement contained a material misrepresentation or omission (2) that caused the plaintiff injury and that (3) the proxy solicitation was an essential link in the accomplishment of the transaction. *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 932 (3rd Cir. 1992) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 385 (1970)). A misrepresentation or omission is material if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by a reasonable investor as having significantly altered the total mix of information made available. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). The Supreme Court has expressly declined to determine what showing of culpability is required to establish liability for a misleading proxy statement. *Id.* at 444, n.7.

The plaintiffs allege that the proxy statement made several material misrepresentations or omissions of fact that painted a bleak picture of Crown's future profitability, thereby inducing Crown's shareholders

to approve the merger with Rosemore. We address each of these contentions in turn.

## A.

We first address plaintiffs' allegation that the proxy statement misrepresented the refining margin known as the crack spread. The plaintiffs assert that Crown emphasized the negative crack spread for December 2000, yet omitted the actual crack spread for January 2001, which the plaintiffs submit to have been $8.64 per barrel. The plaintiffs also argue that the proxy statement should have disclosed industry refining margins other than the crack spread.

We conclude, however, that the plaintiffs have failed to allege facts that would entitle them to relief based upon the defendants' use of crack spreads in the proxy statement. There is no indication in the record that the defendants made any misstatements regarding the crack spread figures or omitted any material information. While the proxy statement did indicate that crack spreads fell from an average of $4.89 per barrel for the first eleven months of 2000 to a negative $1.68 per barrel in December 2000, it also noted that crack spreads were expected to improve to approximately $4.85 per barrel for the first six months of 2001. The plaintiffs do not challenge the accuracy of these numbers, and the predicted upturn hardly gives the impression that the crack spreads were expected to remain at low or negative levels. As to the plaintiffs' assertion that the omission of the actual crack spread for January 2001 was misleading, the omission was immaterial. Because the shareholders were provided with an estimate of improved crack spreads for the first six months of 2001, we find unpersuasive the plaintiffs' contention that the omission of one month's actual crack spread significantly altered the total mix of information made available to investors. *See TSC Indus.*, 426 U.S. at 449. We also find no merit in the plaintiffs' argument that the proxy statement was materially misleading because it did not disclose refining margins other than the crack spread. Rule 14a-9 does not require that Crown include every conceivable methodology available for the determination of refining margins. The proxy statement, therefore, was not materially misleading with respect to crack spreads, and the plaintiffs cannot survive a motion to dismiss with respect to this issue.

## B.

The plaintiffs next allege that Crown omitted from the proxy statement two purchases of refineries in 2000, and, if these industry purchases had been considered in determining the value of Crown's assets, the liquidation of Crown would have been more attractive to the shareholders. The plaintiffs argue on appeal that the refineries were comparable, but the complaint clearly fails to draw a direct comparison. While dismissal under Rule 12(b)(6) is generally disfavored for inartfully drafted complaints, *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993), this is a securities case, and we must apply the pleading requirements of the PSLRA. Because the complaint does not state that the refineries were comparable, it fails to specify the reason why the omission was misleading. *See* 15 U.S.C. § 78u-4(b)(1). Accordingly, the plaintiffs cannot prevail on this issue.

## C.

The plaintiffs also allege that Crown omitted from the proxy statement the favorable impact that would result from the settlement of a labor dispute at Crown's refinery in Pasadena, Texas. Although the settlement of the labor dispute did appear in the proxy statement, Hayes argues that it should have been included in the section titled "Recent Developments." We find the plaintiffs' argument to be without merit. Because information regarding the labor dispute was included in the proxy statement, there was no omission, and the plaintiffs have presented no set of facts on this issue that would entitle them to relief.

## D.

The plaintiffs next allege that the proxy statement was misleading because it treated the termination of Crown's contract with Statoil as a detriment to Crown, when in fact the termination of the contract provided the potential for increased profits. Although a fair reading of the "Recent Developments" section of the proxy statement would perhaps lead one to conclude that the termination of the Statoil contract was a negative development for Crown, the plaintiffs have not alleged that the statements therein—asserting that the conclusion of the contract would increase Crown's credit and working capital

requirements at the Pasadena factory—were false. Moreover, the 1999 Form 10-K, filed with the SEC and attached to the proxy statement, plainly revealed the advantages associated with the Statoil contract termination. We therefore conclude that the plaintiffs cannot prevail on this issue.

E.

The plaintiffs also argue that the proxy statement misrepresented Crown's plans regarding the future sale of its assets. According to the proxy statement, Crown had no plans to sell a material amount of its assets. The plaintiffs point to a newspaper article, dated five months after the shareholders approved the merger, reporting that Crown had been considering the sale of its refineries for more than a year. The newspaper article, however, fails to demonstrate that the proxy statement was misleading. Crown publicly stated in early 1999, at the time it hired CSFB, that it was considering the sale of its assets, and this information was fully disclosed in the proxy statement. Given Crown's interest in selling its assets during the months prior to the merger, it is not surprising that a newspaper article characterized Crown as having an ongoing interest in the sale of its assets during the past year. In any case, Crown's assertion that it had no plans to sell its assets at the time of the proxy statement did not necessarily mean that Crown was not considering the eventual sale of those assets. The plaintiffs, therefore, cannot prevail on this issue.

F.

We turn next to the plaintiffs' allegation that Crown misrepresented the CSFB selected companies analysis, and that, as a result, the purported range of share values in the proxy statement was inaccurate. Although the statement described the analysis as utilizing Crown's estimated 2000 and 2001 EBITDA, the plaintiffs contend that CSFB only considered Crown's 1997-1999 EBITDA in its calculations regarding the "Pasadena" segment of Crown's operations. If the 2000 and 2001 EBITDA had been incorporated into these calculations, according to the plaintiffs, the per share reference range would have been $1.51 to $32.26, rather than $4.28 to $7.79. The defendants counter by noting that the calculations regarding the "Wholesale" segment of Crown's operations utilized 2000 and 2001 EBITDA, which

they argue indicates that all segments of Crown's operations, including Pasadena, were calculated properly. The defendants further argue that any alleged discrepancy in the selected companies analysis is immaterial.

Our review of the record indicates that the district court did not consider this issue. We believe that under the circumstances presented, the case should be remanded so that the district court may consider in the first instance the manner in which the EBITDA calculations were used in the selected companies analysis. At this point, we cannot say, as a matter of law, that the EBITDA figures are correct or otherwise immaterial. If the price per share of Crown stock should have been valued as high as $32.26 per share, rather than $7.79 per share as presented in the proxy statement, this information clearly would have been material as it would have significantly altered the total mix made available to shareholders, who had to decide whether to accept the offer of $10.50 per share under the terms of the merger.

III.

Although we make no judgment as to whether the proxy statement was misleading with regard to the EBITDA data, our inquiry under Section 14(a) does not end there. The plaintiffs also allege that Crown, the Board of Directors, and CSFB knowingly issued an objectively false statement of opinion in the proxy statement.

The Supreme Court has held that Section 14(a) of the Act and Rule 14a-9 apply to statements of opinion with respect to material facts. *Virginia Bankshares v. Sandberg*, 501 U.S. 1083 (1991). Liability may arise under Section 14(a) for false statements of reasons, opinion, and belief that are knowingly made. *Virginia Bankshares*, 501 U.S. at 1087. A statement of opinion has both subjective and objective components: "as statements that the directors do act for the reasons given or hold the belief stated and as statements about the subject matter of the reason or belief expressed." *Id.* at 1092. Subjective disbelief by those asserting an opinion, absent proof that the statement was false or misleading, is insufficient to establish liability under Section 14(a). *Virginia Bankshares*, 501 U.S. at 1096.[1]

---

[1]In determining that the complaint did not allege that the statement of opinion was "knowing" under *Virginia Bankshares*, the district court

The plaintiffs allege that Crown, the Board of Directors, and CSFB issued a statement of opinion that the merger price was fair to Crown shareholders when, in fact, the merger price was not fair (objectively false) and the defendants knew or should have known that it was not fair (subjectively false). The district court dismissed these claims, finding that the plaintiffs had not satisfied the pleading requirements of the PSLRA by failing to allege facts giving rise to a strong inference that the defendants knowingly issued a false statement of opinion in the proxy statement. *See* 15 U.S.C. § 78u-4(b)(2).

The district court, as it did with the plaintiffs' claim alleging material misstatements of fact, did not consider the manner in which the EBITDA calculations were used in the selected companies analysis. The claims alleging false statements of opinion, therefore, should also be remanded to allow the district court to consider them in light of this issue.

## IV.

The district court dismissed the plaintiffs' claim against Rosemore and Henry Rosenberg, Jr. as controlling persons under Section 20(a) of the Act. The court held that because the plaintiffs failed to state a claim for primary violations of the Act under Section 14(a), the plaintiffs necessarily failed to state a claim under Section 20(a). If, on remand, the district court determines that the plaintiffs have stated a Section 14(a) claim, the Section 20(a) claim, of course, should be reconsidered.

## V.

Last, we turn to the Maryland state law claims. The plaintiffs allege a breach of fiduciary duty against Crown's directors and Rosemore

---

appears to have considered it significant that the plaintiffs expressly excluded allegations of fraud, presumably because scienter, or an intent to deceive, is a necessary element of securities fraud. We note, however, that the Supreme Court has not determined whether it is necessary to demonstrate scienter to satisfy the "knowing" element of a Section 14(a) claim. *See Virginia Bankshares*, 501 U.S. at 1091, n.5.

because they knew or should have known that the merger was not in the best interests of the public shareholders of Crown. The plaintiffs also assert a claim against CSFB for aiding and abetting the alleged breach of fiduciary duty by the directors. The plaintiffs specifically excluded, however, allegations of fraudulent conduct.

Under Maryland law, directors owe fiduciary duties to a corporation's shareholders. *Toner v. Baltimore Envelope Co.*, 498 A.2d 642, 648 (1985). A corporation's charter may limit the liability of directors for money damages except to the extent that (1) the directors received an improper benefit or (2) engaged in active and deliberate dishonesty. Md. Code Ann., Cts. & Jud. Proc. § 5-418. Because Crown's charter specifically limits the liability of its directors for money damages as provided by law, the plaintiffs must allege an improper benefit or active and deliberate dishonesty in order to state a claim.

We conclude that the plaintiffs have not alleged facts necessary to survive a motion to dismiss their claim against the directors. The complaint does not allege that the directors received improper benefits. As to active or deliberate dishonesty, the plaintiffs cannot prevail because the pleadings specifically exclude allegations of fraud. Accordingly, the district court properly granted the motion to dismiss the claim against the directors for breach of fiduciary duty.[2]

The plaintiffs also allege that Rosemore owed a fiduciary duty to the minority shareholders and breached that duty by purchasing Crown at an unfair price. Maryland law provides that in certain circumstances, majority shareholders owe fiduciary duties to minority shareholders. *See Toner*, 498 A.2d at 647-648. The plaintiffs argue that Rosemore, although a minority shareholder, should be considered a majority shareholder because the combined shares of Rosemore and Novelly constituted a majority of votes eligible to be cast. We decline, however, to recharacterize a minority shareholder as a majority shareholder. Furthermore, Novelly was not a named defendant in this action. The plaintiffs, therefore, have failed to state a claim against Rosemore for breach of fiduciary duty.

---

[2]Because the plaintiffs have failed to state a claim against the directors, the plaintiffs' claim against CSFB for aiding and abetting the alleged breaches of fiduciary duty must also fail.

## VI.

Accordingly, we vacate the judgment of the district court in part and remand the Section 14(a) and Section 20(a) claims for consideration of the defendants' use of EBITDA in the selected companies analysis. We affirm the judgment of the district court as to all other alleged misrepresentations of material fact, and we affirm the dismissal of the state law claims.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED*