<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-1584**

MILDRED F. JONES; RONALD L. LAZZARINE; TAMMY LAZZARINE; NELLIE G. MOSES, on behalf of themselves and others similarly situated,

Plaintiffs – Appellants,

v.

SEARS ROEBUCK AND COMPANY; SEARS HOLDING CORPORATION; SEARS NATIONAL BANK; CITIBANK (USA), N.A., their successors and assigns jointly and severally,

Defendants – Appellees.

Appeal from the United States District Court for the Southern District of West Virginia, at Beckley. Thomas E. Johnston, District Judge. (5:06-cv-00345)

Argued: September 23, 2008          Decided: November 10, 2008

Before TRAXLER,[1] KING, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

---

[1] Judge Traxler participated in the oral argument of this case, and thereafter recused himself. This decision is thus rendered by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

**ARGUED**: Henry Drewry McCoy, II, Peterstown, West Virginia, for Appellants. Daniel Harris Squire, WILMER, CUTLER, PICKERING, HALE & DORR, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** Raymond A. Bragar, BRAGAR, WEXLER & EAGEL, P.C., New York, New York, for Appellants. Rebecca J. K. Gelfond, Kelly Thompson Cochran, WILMER, CUTLER, PICKERING, HALE & DORR, L.L.P., Washington, D.C.; Christopher R. Lipsett, WILMER, CUTLER, PICKERING, HALE & DORR, L.L.P., New York, New York, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Mildred Jones, Ronald and Tammy Lazzarine, and Nellie G. Moses, on behalf of themselves and others (collectively, the "Plaintiffs"), appeal from an adverse judgment in their purported class action proceeding against Sears Roebuck & Co., Sears Holding Corporation, Sears National Bank, and Citibank USA, N.A. (collectively, the "Defendants"). The district court disposed of the relevant contentions in three steps: (1) denying the Plaintiffs' motion to remand, Jones v. Sears Roebuck & Co., No. 5:06-cv-00345 (S.D. W. Va. Mar. 8, 2007) (the "Remand Denial");[2] (2) granting the Defendants' motion to dismiss, Jones v. Sears Roebuck & Co., No. 5:06-cv-00345 (S.D. W. Va. Mar. 28, 2007) (the "Dismissal Opinion");[3] and (3) denying the Plaintiffs' motion for reconsideration, Jones v. Sears Roebuck & Co., No. 5:06-cv-00345 (S.D. W. Va. May 18, 2007) (the "Reconsideration Denial").[4] On appeal, the Plaintiffs maintain that the court erred in dismissing their claims and declining to remand to state court, in denying reconsideration, in failing to conduct a

---

[2] The Remand Denial is found at J.A. 105-17. (Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

[3] The Dismissal Opinion is found at J.A. 118-27.

[4] The Reconsideration Denial is found at J.A. 129-30.

3

hearing on the motion to remand, and in failing to grant leave to amend. As explained below, we affirm.

I.

A.

This proceeding originated on November 18, 2003, in the Circuit Court of Raleigh County, West Virginia, when Mildred Jones and Ronald and Tammy Lazzarine (collectively, the "Original Plaintiffs"), filed suit against Sears National Bank ("SNB") and Sears, Roebuck & Co. ("Sears"), on behalf of all West Virginia residents holding Sears credit cards. In that complaint (the "State Complaint"), the Original Plaintiffs made three claims: (1) seeking a declaration that the arbitration provision in their Sears credit card agreements was unconscionable (Count I); (2) seeking statutory damages under the West Virginia Consumer Credit and Protection Act (the "WVCCPA") for unconscionable conduct (Count II); and (3) seeking declaratory and equitable relief under the WVCCPA because SNB and Sears failed to disclose trademark licensing relationships or place their addresses on credit cards, misleading class members as to the identification of the creditor (Count III).[5] On the face of the State Complaint, the words "Citibank USA,

---

[5] The State Complaint is found at J.A. 278-88.

4

N.A." were handwritten in the caption, although Citibank was not mentioned in the factual allegations.[6]

In February 2004, SNB and Sears filed a motion to dismiss the State Complaint, contending that Counts I and II failed to present any justiciable issues because the Original Plaintiffs had not alleged an underlying dispute or sought to invoke the arbitration provision, and that Count III failed to state a claim. In December 2005, the state court dismissed Counts I and II, explaining,

> (1) . . . [T]here exists no case or controversy between the parties sufficient to support this court's exercise of its constitutional jurisdiction, or, in the alternative, (2) if constitutional jurisdiction exists, the proper exercise of this court's discretion is that it should decline to consider declaratory relief as requested by the individual plaintiffs.

Jones v. Sears, Roebuck & Co., No. 03-C-1011-B, slip op. at 6 (W. Va. Cir. Ct. Dec. 15, 2005) (the "State Court Opinion").[7] The state court also dismissed Count III, ruling that the Original Plaintiffs had not proffered any legal basis for the argument that a credit card issuer must disclose certain geographic licensing and trademark information to its customers.

---

[6] The state court declined to treat Citibank as a party to the State Complaint because no factual allegations were made against it.

[7] The State Court Opinion is found at J.A. 313-20.

5

_Id._ at 8.   Notably, the state court dismissed the State Complaint without certifying the class.

Subsequently, on March 9, 2006, the Plaintiffs — the Original Plaintiffs plus Nellie Moses — filed an amended complaint in the state court that the Defendants removed to federal court (the "Federal Complaint").[8]  The Plaintiffs therein added Citibank and Sears Holdings Corporation ("SHC") as defendants.[9]  The Federal Complaint alleges five counts, with Counts I through III being substantially the same as Counts I through III of the State Complaint.

Count IV of the Federal Complaint alleges violations of (1) a Federal Trade Commission ("FTC") consent decree, and (2) the WVCCPA, on behalf of Moses and other Plaintiffs.  Count IV asserts that Sears's actions violated an FTC consent decree forbidding Sears to "[c]ollect any debt . . . that has been legally discharged in bankruptcy proceedings and that respondent is not permitted by law to collect."  In the Matter of Sears

---

[8] The Federal Complaint is found at J.A. 13-34.

[9] According to the Federal Complaint, Citibank is a "successor and assignee in interest" of Sears credit card accounts because Citibank acquired the accounts in November of 2003 for approximately $3.5 billion.  Federal Complaint ¶ 7.  It further alleges that SHC is the parent company that resulted from a merger between Sears and KMart Corporation in March 2005, that SHC took the place of Sears on the New York Stock Exchange, and that SHC is the parent corporation of Sears.

6

Roebuck & Co., FTC File No. 972-3187 (June 4, 1997) (the "Consent Decree").[10] Count IV further alleges that Sears contravened the Consent Decree because it had initiated an action against Moses in state court in January 2001 — the year after her liability had been discharged due to Chapter 7 bankruptcy — to enforce a security interest in goods she purchased using a Sears credit card (the "Collection Suit"). The Collection Suit was dismissed in March 2002 for nonprosecution, but allegedly violated the WVCCPA because Sears's conduct constituted "unfair methods of competition and unfair or deceptive acts or practices." W. Va. Code § 46A-6-104.[11]

Count V of the Federal Complaint contains the same allegations as Counts I through IV, and is asserted on behalf of a limited subclass of plaintiffs ("Subclass A"), namely, all Sears credit card holders in West Virginia (1) who held credit cards between the filing of the Consent Decree (June 4, 1997), and the filing of the Federal Complaint (November 18, 2003), and (2) against whom Sears or SNB enforced or sought to enforce a

---

[10] The Consent Decree is found at J.A. 70-78.

[11] The entire text of West Virginia Code section 46A-6-104 provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

7

security interest while the card agreements contained the arbitration provision.

B.

On May 10, 2006, Citibank removed the Federal Complaint to the Southern District of West Virginia, pursuant to 28 U.S.C. § 1446 and a Class Action Fairness Act ("CAFA") provision, 28 U.S.C. § 1453. The Plaintiffs moved to remand to state court, and the district court denied the motion. On May 17, 2006, all Defendants (SNB, Sears, SHC, and Citibank) sought dismissal of the Federal Complaint, and the court filed the Dismissal Opinion on March 28, 2007. In its ruling, the court made the following conclusions: (1) Counts I and II are not justiciable under Article III of the Constitution of the United States because they present no case or controversy; (2) the state court's 2005 dismissal of Count III should stand, pursuant to the law of the case doctrine; (3) Count IV does not state a claim under the terms of the Consent Decree or under West Virginia law; and (4) Count V simply restated the other counts on behalf of a limited subclass of plaintiffs, and therefore should also be dismissed.

By letter of February 23, 2007, the Plaintiffs had informally suggested that the district court conduct a "preliminary hearing" before it disposed of the motion to remand. The Plaintiffs later sought reconsideration of the Dismissal Opinion, and the court filed its Reconsideration

8

Denial on May 18, 2007, explaining that the Plaintiffs were rehashing old arguments or raising assertions that could have been made earlier. In seeking reconsideration, the Plaintiffs also sought leave to amend, and the Reconsideration Denial did not explicitly refer to the amendment request. The Plaintiffs have timely noted this appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review de novo issues of standing and justiciability. Piney Run Pres. Ass'n v. County Comm'rs, 268 F.3d 255, 262 (4th Cir. 2001). We also review de novo a district court's dismissal for failure to state a claim upon which relief can be granted. Mayes v. Rapoport, 198 F.3d 457, 460 (4th Cir. 1999). By contrast, we review for abuse of discretion a district court's denial of a motion for reconsideration or a request for leave to amend. Ingle v. Yelton, 439 F.3d 191, 197 (4th Cir. 2006) (providing standard for denial of reconsideration); Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002) (explaining standard for denial of leave to amend).

## III.

This appeal challenges the Dismissal Opinion's rulings (1) that Counts I and II are not justiciable under Article III,

9

and thus subject to dismissal, because each fails to present a case or controversy; (2) that dismissal of Count III was mandated under the law of the case doctrine; (3) that Count IV fails to allege a claim under either the FTC Consent Decree or West Virginia law; and (4) that Count V simply restates the other counts on behalf of a limited subclass of plaintiffs, and therefore must be dismissed as well. The Plaintiffs also contend that the court erred in the Remand Denial, the Reconsideration Denial, and in failing to grant leave to amend. As explained below, we affirm the Dismissal Opinion on the following bases: Counts I and II because the Plaintiffs lack standing; Count III as to the Original Plaintiffs under the law of the case doctrine, and because the added Plaintiffs lack standing; and Counts IV and V for lack of standing.

A.

First of all, we assess the district court's dismissal of Counts I and II of the Federal Complaint. In Count I, the Plaintiffs seek declaratory relief under the West Virginia Declaratory Judgment Act,[12] maintaining that the arbitration

---

[12] Although the State Complaint purported to invoke West Virginia's Declaratory Judgment Act, we apply the federal Declaratory Judgment Act in this proceeding. See 28 U.S.C. § 2201; Chapman v. Clarendon Nat'l Ins. Co., 299 F. Supp. 2d 559, 562-63 (E.D. Va. 2004) (holding that removal of state declaratory judgment action invokes § 2201).

10

provisions of the Sears credit card agreements are unconscionable. They claim that the agreements unlawfully bar participation in class actions, prevent access to the courts, and unconstitutionally deprive them of their right to a jury trial. In Count II, the Plaintiffs allege violations of the WVCCPA and claim statutory damages. As explained below, we agree that Counts I and II fail to present a justiciable case or controversy under Article III of the Constitution.

A federal court may exercise its jurisdiction in a declaratory judgment proceeding only when "the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment." Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 592 (4th Cir. 2004) (internal quotation marks omitted). In order to satisfy this requirement, a plaintiff must possess standing to sue, meaning that a claim must present a "controversy that qualifies as an actual controversy under Article III of the Constitution." Id. Standing encompasses three components: "(1) the plaintiff must allege that he or she suffered an actual or threatened injury that is not conjectural or hypothetical, (2) the injury must be fairly traceable to the challenged conduct, and (3) a favorable decision must be likely to redress the injury." Miller v. Brown, 462 F.3d 312, 316 (4th

11

Cir. 2006) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

In light of our decision in Volvo, Count I fails to show an actual or threatened injury that rises to the level of a case or controversy. Volvo also concerned a claim for declaratory relief, and although we found a controversy present, we observed that one is not present when "the defendant ha[s] not taken any action, even of a preliminary nature, against the plaintiff, and the defendant ha[s] not indicated that it intend[s] to take any future legal action against the plaintiff." 386 F.3d at 592 n.12 (distinguishing N. Jefferson Square Assocs. v. Va. Hous. Dev. Auth., 94 F. Supp. 2d 709, 714 (E.D. Va. 2000)). Such is precisely the situation at hand: none of the Defendants has threatened to invoke the arbitration provision, and none of the Plaintiffs has alleged an underlying dispute that might legitimately progress to that point.

The Plaintiffs apparently added Moses as a named plaintiff in the Federal Complaint to correct their standing problem, as evidenced by their present contention that "only one plaintiff must have standing in order that a federal court have jurisdiction over a class action suit under Article III." Br. of Appellants 17 (citing Bowsher v. Synar, 478 U.S. 714, 721 (1986)). The addition of plaintiff Moses, however, fails to cure the Plaintiffs' standing problem. Moses was subjected to

the Collection Suit by Sears in 2001, and the Plaintiffs maintain that it "relegate[ed] her solely to arbitration under NAF [National Arbitration Forum] auspices." Id. at 22. In other words, the Plaintiffs contend, if Moses had filed a counterclaim in the Collection Suit, she would likely have had to submit to arbitration in an NAF forum.

Assuming the validity of such an assertion, it does not raise Moses's claim in Count I to an Article III case or controversy. Declaratory judgment actions must allege disputes that are "real and substantial and admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." MedImmune, Inc. v. Genetech, Inc., 127 S. Ct. 764, 771 (2007) (internal quotation marks omitted). As with other Plaintiffs, Sears neither invoked nor threatened to invoke the arbitration provision of Moses's credit card agreement, and any ruling made here on the arbitration provision would constitute an advisory opinion.

The Plaintiffs also maintain on appeal that a district court "should refuse to entertain a declaratory judgment only for good cause." Br. of Appellants 27 (citing Aetna Cas. & Surety Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937)). The lack of standing is sufficient good cause, however; it is the "threshold question in every federal case, determining the power

13

of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498 (1975). Thus, in the absence of an injury and with no "real and substantial" dispute, the court properly declined to entertain Count I upon removal.

In its Dismissal Opinion, the district court compared this proceeding to the situation in Bowen v. First Family Financial Services, Inc., 233 F.3d 1331 (11th Cir. 2000). In Bowen, the class action plaintiffs lacked standing to question whether arbitration agreements are generally unenforceable under the Truth-in-Lending Act. The Eleventh Circuit so ruled because "there [was] no allegation that First Family has invoked, or threatened to invoke, the arbitration agreement to compel the plaintiffs to submit any claim to arbitration." Id. at 1339.[13]

---

[13] The Eleventh Circuit addressed two separate standing issues in Bowen: first, under the Truth-in-Lending Act and second, under the Equal Credit Opportunity Act (the "ECOA"). Although the court ruled that the plaintiffs did not possess standing to pursue a Truth-in-Lending Act claim, it concluded that they possessed standing to challenge the defendant's requirement that customers must execute arbitration agreements as a condition of credit under the ECOA. But the plaintiffs' standing only arose from the ECOA itself, which creates an explicit cause of action for consumers who are discriminated against "with respect to any aspect of a credit transaction" because they "in good faith, exercise[] any right under [the Consumer Credit Protection Act]." Bowen, 233 F.3d at 1334-35 (citing 15 U.S.C. § 1691(a)). In so ruling, the court of appeals reasoned that "[t]he difference is that the plaintiffs were required to and did sign the arbitration agreement, but there has been no occasion for First Family to attempt to enforce it against them." Id. at 1339. The matter on appeal is more analogous to the Truth-in-Lending Act claim because these (Continued)

14

This action is similar to Bowen because the Plaintiffs have not sufficiently alleged that the Defendants either invoked or threatened to invoke the arbitration provision of the Sears credit card agreements.

We thus agree, in disposing of Count I, with the courts that have deemed a challenge to an arbitration provision, in the absence of an underlying dispute or imminent injury, to be nonjusticiable. See, e.g., Bowen, 233 F.3d 1331; Lee v. Am. Express Travel Related Servs., No. 07-04765, 2007 WL 4287557, at *5 (N.D. Cal. Dec. 6, 2007) (concluding that plaintiffs "have not and cannot allege any damage because they do not have a dispute with defendants that they tried unsuccessfully to litigate as a class action"); Rivera v. Salomon Smith Barney Inc., No. 01 Civ. 9282, 2002 WL 31106418, at *6-7 (S.D.N.Y. Sept. 20, 2002) (recognizing that plaintiff lacked standing to seek declaratory relief on arbitration provision because she did not "file[] or serve[] any lawsuit alleging that [defendant] . . . [or] anyone representing any of the defendants has informed her that they will seek to invoke the Arbitration Policy"); Tamplenizza v. Josephthal & Co., 32 F. Supp. 2d 702, 704

---

Plaintiffs do not allege that they were coerced into signing an arbitration provision in exchange for exercising a statutory right.

15

(S.D.N.Y. 1999) (recognizing as nonjusticiable challenge to arbitration provision, absent sufficient indications that it would be invoked). Notably, some courts have premised such decisions on the ripeness doctrine. See Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1019-20 (1984) (recognizing lack of ripeness on whether arbitration will provide reasonable compensation, where plaintiff "did not allege or establish that it had been injured by actual arbitration under the statute"); Bd. of Trade v. Commodity Futures Trading Comm'n, 704 F.2d 929, 932 (7th Cir. 1983) (concluding that threatened enforcement of arbitration rule did not establish ripeness).

The Plaintiffs rely on the Second Circuit's decision in Ross v. Bank of America, N.A., for the proposition that they suffered an injury-in-fact and therefore possess standing. See 524 F.3d 217 (2d Cir. 2008). In Ross, a group of plaintiffs sued Bank of America and Citibank, among others, because their credit card agreements included provisions imposing arbitration "as the sole method of resolving disputes relating to the credit accounts" and disallowing class action proceedings. Id. at 220. The Ross plaintiffs, however, were pursuing a different proposition than we face here. They claimed that the agreements violated the antitrust statutes because the banks had colluded "to constrict the options available to cardholders"; they did not simply allege that the provision alone caused them injury.

16

Id. at 223.  The Second Circuit held that the plaintiffs possessed standing "in terms of the antitrust injuries that the cardholders have asserted," observing that "one form of antitrust injury is '[c]oercive activity that prevents its victims from making free choices.'"  Id. (emphasis added) (quoting Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 528 (1983)).  Our situation is distinguishable — the Plaintiffs have not alleged antitrust violations or collusion by credit card companies.  We thus agree with the Defendants that Ross does not support the Plaintiffs' argument on standing.[14]

Turning to Count II, we recognize that this claim turns on the possibility of collecting damages under the WVCCPA for the

_____

[14] The Plaintiffs also rely on Arnold v. United Cos. Lending Corp., for the proposition that an arbitration agreement "contain[ing] a substantial waiver of the borrower's rights . . . while preserving the lender's right to a judicial forum . . . is unconscionable." 511 S.E.2d 854, 862 (W. Va. 1988). Arnold, however, involved certified questions concerning arbitration provisions, and the ruling was premised on the presumption that "some controversy remains before the circuit court." Id. at 858. Thus, Arnold did not present a standing issue. The Plaintiffs also rely on State ex rel. Dunlap v. Berger, and assert that arbitration provisions are unconscionable because they are rarely read or understood by cardholders. 567 S.E.2d 265, 274 (W. Va. 2002). Dunlap addressed the merits of the unconscionability issue only, not the question of standing. Id. at 269. These West Virginia decisions thus do not aid our analysis.

17

Defendants' conduct.[15]  The Plaintiffs contend that Moses and the other Plaintiffs seek to "redress th[e] wrong" of allegedly unconscionable arbitration provisions under West Virginia law. Br. of Appellants 25.  In order to award damages, however, a court would be required to first decide that the arbitration provisions are unconscionable, or that the Defendants engaged in unconscionable conduct.  Because we have already concluded that this issue is nonjusticiable, the Plaintiffs lack Article III standing to pursue Count II.

B.

We must now analyze the issues presented with respect to the district court's dismissal of Count III of the Federal Complaint.  As explained below, we also affirm the Dismissal Opinion with respect to this claim.

We first examine the Plaintiffs' contention that the district court erroneously dismissed Count III of the Federal Complaint, which alleges that Defendants engaged in unfair and

---

[15]  In Count II, the Plaintiffs claim $1,000 for each violation of the WVCCPA, under sections 46A-5-101 and/or 46A-5-105.  Section 46A-5-101(1) provides that a debtor who can show that his or her creditor violated Chapter 46A "has a cause of action to recover actual damages and . . . a penalty [of] . . . not less than one hundred dollars nor more than one thousand dollars."  Pursuant to section 46A-5-105, "if a creditor has willfully violated the provisions of this chapter, . . . in addition to the remedy provided in [section 46A-5-101], the court may cancel the debt when the debt is not secured by a security interest."

18

deceptive trade practices, in violation of the WVCCPA. More specifically, it asserts that, in failing to disclose their trademark licensing relationships and their physical addresses on credit cards, the Defendants misled the class members with respect to the corporate entities and geographical addresses of their creditors. For such deceptive practices, the Plaintiffs maintain that section 46A-6-106 of the WVCCPA permits them to collect statutory damages of $200 per violation. Because the state court dismissed Count III with respect to the original parties only, we will separately examine the Plaintiffs' contentions with regard to both the original parties and the added parties.

### 1.

In 2005, the state court dismissed Count III of the State Complaint under West Virginia Rule 12(b)(6), for failure to state a claim upon which relief can be granted. The Dismissal Opinion dismissed the virtually identical Count III of the Federal Complaint under the law of the case doctrine and 28 U.S.C. § 1450.[16] Pursuant to the law of the case doctrine, "a

---

[16] The Plaintiffs contend that Count III of the Federal Complaint contains "material revisions" from the State Complaint. Br. of Appellants 33. This contention is without merit, however, because the only revisions made to the Federal Complaint are not materially distinct allegations. First, the Plaintiffs simply added the allegation that Sears and SNB were likely not the true and correct owners of the accounts because (Continued)

19

court should not reopen issues decided in earlier stages of the same litigation." Agnostini v. Felton, 521 U.S. 203, 236 (1997). Similarly, under § 1450, "[a]ll injunctions, orders, and other proceedings had in such [state court] action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." See also Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70, 415 U.S. 423, 436 (1974) ("After removal, the federal court 'takes the case up where the State court left it off.'" (quoting Duncan v. Gegan, 101 U.S. 810, 812 (1880))). As the Supreme Court explained in Granny Goose Foods, in recognizing that the underlying state court rulings are effective in federal court, the interests of judicial economy

---

they sold them as "securitized assets" to unknown parties. Federal Complaint ¶ 19, n.2. Second, the Plaintiffs contend that the Federal Complaint alleges — in contrast to the State Complaint — that SNB has disappeared or has been liquidated. These revisions merely reflect a change in the Defendants' situation, however, and do not affect the state court's dismissal of its Count III. Third, the Plaintiffs also claim that they added specific statutes to Count III of the Federal Complaint. These are all grounded in West Virginia law, however, and the state court ruled that the Original Plaintiffs have failed to allege a cause of action under West Virginia law. Finally, the Dismissal Opinion correctly observed that, in response to the Defendants' motion to dismiss the Federal Complaint, the Plaintiffs addressed Count III simply by incorporating by reference the arguments they had made in state court.

are promoted and the parties' rights are protected.  <u>See</u> 415 U.S. at 435-36.

Although most of the decisions invoking § 1450 relate to state court injunctions and interlocutory rulings in removed federal cases, their reasoning extends to proceedings such as this, where a federal court must address a claim that has been previously dismissed in state court.  The utilization of § 1450 in this setting thus advances the principles that it seeks to promote — judicial economy and protection of the parties' rights — and also implicates the law of the case doctrine.  In sum, the Plaintiffs have not presented us with any reason for disturbing the state court's ruling on Count III as to the Original Plaintiffs.

2.

Because Citibank and SHC were first made defendants in the Federal Complaint (the state court found that Citibank was not a defendant in the State Complaint), we must assess Count III with regard to these additional defendants.  Similarly, because Moses and the Subclass A plaintiffs were added as plaintiffs in the Federal Complaint, we must analyze Count III as to them.  As explained below, the new plaintiffs lack standing to pursue Count III against Citibank and SHC because the Federal Complaint fails to sufficiently allege an injury or threatened injury.

In that respect, the Plaintiffs contend that the Defendants

21

> engage in a definite and elaborate scheme and unfair method of doing business so that consumers and credit cardholders may not readily locate either any telephone number or physical mailing address or actual place of business other than post office boxes and other than so-called "Customer Service" 800 numbers.

Federal Complaint ¶ 57. The Plaintiffs also allege that "Sears National Bank is not in fact and in law the owner of the trademarks" of the credit cards, as Sears has led its consumers to believe. Id. at ¶ 55. The Plaintiffs allege that Sears and Citibank caused SNB to be liquidated and dissolved, "without any merger or supersedes clauses in any agreement upon which a Sears cardholder may rely," and classify the Defendants' actions as a "classic 'shell' game." Id. at ¶ 56, 58. They assert that Citibank continues a pattern of "deceptive practices" and "should similarly be enjoined from such practices" for violation of West Virginia Code section 46A-6-102(f)(3), (f)(4).[17] Id. at ¶ 60.

The Plaintiffs have failed, however, to explain how they were or could be injured by the alleged "tremendous confusion" created by defendants' conduct. Federal Complaint ¶ 56. The solution to this problem, they maintain, is that Citibank

---

[17] Under the WVCCPA, "unfair trade practices" include: "[c]ausing likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another" and "[u]sing deceptive representations or designations of geographic origin in connection with goods or services." W. Va. Code § 46A-6-102(7)(C),(7)(D) (renumbered 2005).

22

"should be ordered to place the physical location and street address on their credit cards as to where a cardholder may dispute dealings of defendants, including service of legal process."  Id. at 60.  Again, they fail to explain how such a mandate would have assisted them in locating the Defendants, or how any of the Plaintiffs were harmed by the absence of such a disclosure.

Although the Plaintiffs seek to utilize the WVCCPA as a means to secure standing, this effort also fails.  The WVCCPA provides that "unfair methods of competition and unfair or deceptive acts or practices" include

> [t]he act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby.

W. Va. Code § 46A-6-102(7)(M) (emphasis added).  In order to invoke this provision, however, a plaintiff is obliged to plead with particularity that defendants have fraudulently misrepresented their identity to consumers, or intended that others rely on the omission of a correct address and phone number.  See Fed. R. Civ. P. 9(b).  No such pleading was presented, and a cursory reference to a "shell game" and "a pattern of deceptive practices" is simply not sufficiently

23

particular to proceed.  See Garvin v. S. States Ins. Exch. Co., 329 F. Supp. 2d 756, 760 (N.D. W. Va. 2004) (concluding that, on fraud claims, elements pleaded with particularity include time, place, and contents of false representations), aff'd, No. 05-1812, 2006 U.S. App. LEXIS 1593 (4th Cir. Jan. 23, 2006).

Finally, although the Plaintiffs allege in Count III that locating the actual place of business of the Defendants causes extreme difficulty, the state court observed that "[t]his is a rather difficult point for Plaintiffs to maintain because they have, it seems, managed to sue the Defendants."  State Court Opinion 7.  In any event, the Sears credit card agreement states that SNB, as issuer, is an affiliate of Sears.  J.A. 51 (defining "we," "us," and "our" as "Sears National Bank (an affiliate of Sears) or any subsequent holder of the account or . . . any servicer of your account authorized by us").  For these reasons, the Dismissal Opinion must be affirmed as to Count III — with respect to both Moses and the Subclass A plaintiffs — because they lack standing to pursue it.

C.

Having disposed of the three counts that were first pursued in the State Complaint, we turn to Counts IV and V, the claims alleged for the first time in the Federal Complaint.  We begin with Count IV.

1.

The district court dismissed Count IV under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. If we disagree with that ruling, we are nonetheless entitled to affirm on different grounds "if fully supported by the record." Brewster of Lynchburg, Inc. v. Dial Corp., 33 F.3d 355, 361 n.3 (4th Cir. 1994). Because this record reveals that none of the Plaintiffs — i.e., the Original Plaintiffs, the Subclass A plaintiffs, or Moses — has standing to pursue Count IV, we affirm for that reason. See Davis v. Fed. Election Comm'n, 128 S. Ct. 2759, 2769 (2008) ("A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct."); Bowen, 233 F.3d at 1340 ("A threatened injury must be 'certainly impending' to constitute injury in fact." (quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990))).

In Count IV, the Plaintiffs allege violations of the Consent Decree and seek statutory damages for violations of the WVCCPA (specifically section 46A-6-104). In the Decree, Sears was ordered not to "[c]ollect any debt (including any interest, fee, charge, or expense, incidental to the principal obligation) that has been legally discharged in bankruptcy proceedings and that respondent is not permitted by law to collect." Consent Decree 3. Count IV alleges that Sears violated the Decree and the WVCCPA by filing the Collection Suit.

25

The state court terminated the Collection Suit in March 2002 for nonprosecution, and Count IV fails to plead any facts to show that Sears had "collect[ed] any debt" from Moses either before or after termination of the Collection Suit. The Plaintiffs contend, however, that "the law suit [sic], nonetheless, constitutes . . . a continuing violation of the [Consent Decree] . . . until the date of [the Collection Suit's] dismissal." Federal Complaint ¶ 43. To the contrary, the Collection Suit could not be classified as a threatened violation of the Consent Decree.

The Collection Suit sought the enforcement of a security interest, not the collection of a debt, and "[a] discharge in bankruptcy . . . ordinarily does not wipe out previously perfected security interests in tangible personal property. The lienholder retains a right of repossession, subject, however, to the bankrupt's possible right of redemption." Arruda v. Sears Roebuck & Co., 310 F.3d 13, 16 (1st Cir. 2002); see also Farrey v. Sanderfoot, 500 U.S. 291, 297 (1991) ("Ordinarily, liens and other secured interests survive bankruptcy."); Johnson v. Home St. Bank, 501 U.S. 78, 83 (1991) (concluding that Chapter 7 liquidation "extinguishes only the personal liability of the debtor" (internal quotation marks omitted) (emphasis in original)). Because the Consent Decree addressed conduct not

26

alleged in Count IV, that claim fails to allege an injury, or a threatened or imminent injury.

2.

The Plaintiffs also allege in Count IV that Sears's conduct — filing suit against Moses while knowing that she had filed bankruptcy, and its purported violation of the Consent Decree — entitles them to recover statutory damages under the WVCCPA. This aspect of Count IV also fails, however, because Moses and the Subclass A plaintiffs lack standing to collect such damages.

In Orlando v. Finance One of West Virginia, Inc., the Supreme Court of Appeals of West Virginia ruled that a plaintiff cannot collect damages under sections 46A-6-102(f) or 46A-6-104 of the WVCCPA if he "ha[s] suffered no 'ascertainable loss of money or property' as a result of the inclusion of" an allegedly unconscionable provision in a contract. 369 S.E.2d 882, 888 (W. Va. 1988) (quoting W. Va. Code § 46A-6-106). In Orlando, the plaintiffs challenged a purported waiver of a homestead and personal property exemption in their loan contract with Finance One. Id. at 883. After the Plaintiffs defaulted on their loan, Finance One instituted collection activities. It did not, however, seek judicial enforcement of the waiver clause. Id. As in this proceeding, the plaintiffs sued Finance One for a declaration that the waiver clause was unconscionable, and

27

seeking statutory penalties under the WVCCPA because inclusion of the clause was an unfair and deceptive act or practice. Id.

The state supreme court concluded that the Orlando plaintiffs could not collect damages for violations of the WVCCPA because "Finance One made no attempt to enforce [the waiver clause]," and, therefore, "[plaintiffs] suffered no ascertainable loss of money or property." Orlando, 369 S.E.2d at 888. Similarly, Moses and the other Plaintiffs have never alleged a loss of money or property due to the inclusion of an alleged unconscionable provision in their credit card agreements. In such circumstances, they lack standing to pursue a claim for damages under Count IV.[18]

D.

Count V purports to reallege the allegations of Counts I through IV on behalf of Subclass A, a limited number of plaintiffs who held credit cards between June 4, 1997, and November 18, 2003, and against whom Sears or SNB either enforced or attempted to enforce a security interest while the cardholder

_____

[18] The Plaintiffs also make an argument with respect to common law fraud. This issue was mentioned in passing in the Federal Complaint, but nothing was pleaded "with particularity" pursuant to Rule 9(b). The district court did not address this point, and neither do we. See In re Wallace and Gale Co., 385 F.3d 820, 835 (4th Cir. 2004) (observing that failure to raise argument before district court results in waiver on appeal, absent exceptional circumstances).

agreement contained the arbitration provision. These plaintiffs, however, have no greater cognizable injuries or causes of action than the other plaintiffs, as they have not shown either the invocation or the impending invocation of the arbitration provision. Furthermore, because Moses satisfies the requirements of Subclass A, the conclusions we have made regarding Moses are attributable to the Subclass A plaintiffs. We thus affirm the dismissal of Count V for lack of standing.

E.

Finally, we turn to the Plaintiffs' several allegations of procedural error. First and foremost, we are generally unable to review the propriety of the denial of a motion to remand. "It is, of course, beyond question that an order of a district court denying a motion to remand, standing alone, is not a final order appealable under 28 U.S.C. § 1291." Three J Farms, Inc. v. Alton Box Bd. Co., 609 F.2d 112, 114 (4th Cir. 1979). Nevertheless, the Plaintiffs argue that this case was improperly removed and that we can now address that issue. In Aqualon Co. v. Mac Equipment, Inc., however, we recognized that, even if removal was improper, the judgment should not be disturbed if the court possessed jurisdiction to enter it. See 149 F.3d 262, 264 (4th Cir. 1998). Because the district court possessed subject matter jurisdiction, we will not disturb the Remand Denial.

29

The district court properly concluded under CAFA that it possessed subject matter jurisdiction at the time of judgment. See 28 U.S.C. § 1332(d).[19] Under CAFA, a class action may be initiated in federal court if (1) the controversy exceeds the sum or value of $5,000,000; (2) the claim was originally filed as a class action under Rule 23 of the Federal Rules or a comparable state statute; and (3) any member of the class of plaintiffs is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(1)(B), (d)(2)(A). Here, the Federal Complaint seeks damages of approximately $370 million; the claim was filed under West Virginia Rule 23 (governing class actions); and the Plaintiffs are citizens and residents of West Virginia, while the Defendants are citizens of Illinois, South Dakota, and Arizona. In those circumstances, the court possessed diversity jurisdiction over the Federal Complaint.

The Plaintiffs contend, however, that the CAFA provisions do not apply to the Federal Complaint, because the State Complaint was filed in November 2003, prior to CAFA being enacted. CAFA became effective in February 2005 and, according to the Plaintiffs, the Federal Complaint relates back to November 2003. It is uncontested that CAFA applies to any suit

---

[19] Although the Remand Denial concluded that the court possessed diversity jurisdiction under CAFA, it appears to have also possessed diversity jurisdiction under § 1332(a).

30

commenced on or after February 18, 2005. See Pub. L. No. 109-2, § 9, 119 Stat. 14 (2005); Adams v. Ins. Co. of N. Am., 426 F. Supp. 2d 356, 367 (S.D. W. Va. 2006). The Remand Denial correctly determined, however, that CAFA applies here, concluding that the Federal Complaint "commenced" a new action when it was filed in 2006, because it alleged claims that were "factually and legally distinct" from those in the State Complaint. Remand Denial 8.

Because state law controls the issue of whether an amended complaint has "commenced" a new action, we look to West Virginia Rule of Civil Procedure 15(c) for guidance. See Adams, 426 F. Supp. 2d at 370. Pursuant thereto, an amendment of a complaint relates back when it "ar[ises] out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." W. Va. R. Civ. P. 15(c)(2). In other words, a complaint will relate back when its amendments "state a cause of action growing out of the specified conduct of the defendant which gave rise to the original cause of action." Adams, 426 F. Supp. 2d at 375 (citing Roberts v. Wagner Chevrolet-Olds, Inc., 258 S.E.2d 901, 903 (W. Va. 1979)). It follows that, if an amended complaint states a claim growing out of conduct distinct from the original complaint, the amended complaint does not relate back.

31

In this situation, Counts IV and V present new claims that are premised on conduct and occurrences that are readily distinct from the allegations of the State Complaint, and the Federal Complaint thus does not relate back. For example, the Federal Complaint alleges Sears's enforcement of its security interests and violation of the Consent Decree, and it added Moses and a new subclass of plaintiffs presumably affected by such conduct. Because these are distinct and new allegations, the Federal Complaint does not, pursuant to state Rule 15(c)(2), relate back to the filing of the State Complaint. CAFA thus applies here, and the district court possessed subject matter jurisdiction of the Federal Complaint. Any alleged procedural deficiency in the removal process thus does not affect the final judgment of the district court.[20]

---

[20] The district court did not abuse its discretion in filing the Reconsideration Denial and denying the Plaintiffs' request for amendment of the Federal Complaint. First, we have recognized three potential grounds for reconsideration: (1) to accommodate an intervening change in controlling law, (2) to account for new evidence not available at trial, or (3) to correct a clear error of law to prevent manifest injustice. Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993). The Plaintiffs did not assert any of these grounds; thus, their motion was properly denied. The court also did not abuse its discretion in declining to grant leave to amend the Federal Complaint. In Healthsouth Rehabilitation Hospital v. American National Red Cross, we explained that disposition of a motion to amend lies within the sound discretion of the district court. 101 F.3d 1005, 1010 (4th Cir. 1996). The court need not articulate grounds for denying leave to amend, "as long as its reasons are apparent." Id. The Plaintiffs' proposed amendments
(Continued)

IV.

Pursuant to the foregoing, the judgment of the district court is affirmed.

                                                        AFFIRMED

---

— relabeling Count V as Count IV and deleting all references to the Consent Decree — would be futile; therefore, the district court did not err in this respect. Finally, we are not satisfied that the Plaintiffs sufficiently requested a hearing by way of their February 23, 2007 letter to the court. In any event, nothing in the Federal Rules of Civil Procedure obliged the court to hold a hearing in that situation; thus, the court could not have abused its discretion in declining to do so.