<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-1361

UNITED STATES OF AMERICA ex rel. PETER M. ELMS,

Plaintiff - Appellant,

v.

ACCENTURE LLP,

Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Roger W. Titus, District Judge. (8:04-cv-04077-RWT)

Argued: May 13, 2009                    Decided: July 22, 2009

Before DUNCAN, Circuit Judge, HAMILTON, Senior Circuit Judge, and Malcolm J. HOWARD, Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.

Affirmed in part, reversed in part, and remanded by unpublished per curiam opinion.

**ARGUED:** Stephen Z. Chertkof, HELLER, HURON, CHERTKOF, LERNER, SIMON & SALZMAN, PLLC, Washington, D.C., for Appellant. Joseph H. Young, HOGAN & HARTSON, Baltimore, Maryland, for Appellee. **ON BRIEF:** Douglas B. Huron, HELLER, HURON, CHERTKOF, LERNER, SIMON & SALZMAN, PLLC, Washington, D.C., for Appellant. Nicholas G. Stavlas, Allison J. Caplis, HOGAN & HARTSON, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Peter Elms appeals the district court's dismissal of this qui tam action brought under the Federal False Claims Act, 31 U.S.C. §§ 3729-3733 (2000) (the "FCA") in which it is alleged that his employer, Accenture LLP ("Accenture"), submitted false claims to the government in connection with a cost-plus contract and alleging that he was terminated in retaliation for engaging in protected activity under the FCA. Because this court concludes that Elms has pled sufficient facts to satisfy Rule 8 of the Federal Rules of Civil Procedure as to the retaliation claim but has not pled sufficient facts to satisfy Rule 9(b) as to the fraud claim, we affirm in part and reverse in part and remand this matter to the district court for further proceedings as to the retaliation claim.

I.

The facts of this case arise out of a contract between Accenture, an international consulting and technology firm, and the federal government regarding the FVAP Secure Electronic Registration and Voting Experiment ("SERVE"), an initiative headed by the Department of Defense for registering and voting on the internet. The SERVE contract was a cost-plus-fixed-fee contract, with the fee in this particular contract being nine and one-half percent. The provisions of the contract expressly

3

exempt certain named subcontractors, including Avanade, an affiliate in which Accenture held a controlling interest, from the cost-plus-fixed-fee provisions. Instead, the contract contemplates that Accenture will pay for Avanade's services at the "Time and Materials" rate, which includes profit. Accenture then bills the government at this "Time and Materials" rate.

Elms, who designed the software for the SERVE contract, was assigned as Project Manager for the contract. Although he felt he was better suited to be Chief Technical Architect ("CTA") for the project, that position was staffed by someone from Avanade. Elms' superior, Meg McLaughlin, informed Elms that they were going to staff the project with as many Avanade personnel as possible in order to maximize profit. When Elms asked for an explanation of how using Avanade personnel on the project maximized profit, McLaughlin explained that Accenture paid full rates for the Avanade employees and passed that cost along to the government, but Accenture would then receive a rebate of fifty percent or more from Avanade, thereby boosting the profits. In August 2002, Elms expressed concern to McLaughlin that the Avanade rebate did not seem ethical and asked if the rebate would be a problem with the government auditors. McLaughlin told Elms that she would seek a fuller explanation and get back to him, but not to worry about it. She never gave him an explanation.

In September 2008, Elms discussed his concerns about the rebates with Adrian Wilcox, who was responsible for Client Financial Management at Accenture. Wilcox stated that he did not fully understand how the system worked, but that fifty percent of Accenture's payment to Avanade "came back to the job" to boost the bottom-line profit margin. Elms also expressed concerns to Wilcox about what government auditors would think of such a system, and Wilcox assured him that the government auditors would only match invoices to payments and that any accounting documents showing a rebate would be internal to the firm.

Elms alleges that it soon became clear that the Avanade personnel were not up to the challenge of working on SERVE. Elms requested that McLaughlin replace some of the Avanade project personnel with more qualified staff from Accenture, but McLaughlin told Elms that they needed to keep as many Avanade personnel on the project as possible to maintain a higher profit margin.

In early 2003, Elms again questioned McLaughlin about the personnel staffing the project. This time he insisted on removal of the Chief Technical Architect, an Avanade employee, whom he believed to be unqualified for the position. Shortly thereafter, he was informed that he was being removed as Project Manager. Elms then proposed that he assume the Chief Technical

5

Architect role.  McLaughlin refused, saying this would result in an unacceptably low profit margin.  Elms protested, accusing Accenture of "short-changing" the government.  On April 15, 2003, Elms' employment was terminated.

Elms filed the complaint in this matter on December 30, 2004 alleging violations of the FCA and the Age Discrimination in Employment Act ("ADEA").  After the United States declined to intervene, the district court unsealed the complaint in June 2006.  Accenture moved to dismiss the complaint.  The district court granted Accenture's motion to dismiss, concluding that Elms had failed to meet the heightened pleading requirements on his fraud claim, that he had not alleged sufficient facts to make out a retaliation claim, and that his ADEA claim was time barred.[*]  Elms has not appealed the dismissal of his ADEA claim.

---

[*] Prior to the dismissal of his claims, Elms moved to amend his complaint, consistent with a proffer he filed in response to Accenture's motion to dismiss.  The district court denied the motion to amend as futile.  In his reply brief, appellant attempts to challenge the district court's denial of his motion to amend.  However, appellant waived his right to challenge on appeal the district court's denial of his motion to amend the complaint because he raised no contention in the Argument section of his opening brief that the district court abused its discretion in denying his motion to amend the complaint. United States v. Al-Hamdi, 356 F.3d 564, 571 n. 8 (4th Cir. 2004) ("It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned.").

6

II.

We review de novo the district court's order granting Accenture's Rule 12(b)(6) motion to dismiss. Parrington v. Am. Int'l Specialty Lines Ins. Co., 443 F.3d 334, 338 (4th Cir. 2006); Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002).

A.

The FCA imposes civil liability on any person who "knowingly presents, or causes to be presented to [the United States government] a false or fraudulent claim for payment or approval" or who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(1), (2). This court has established the following test for FCA liability: "(1) whether there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that causes the government to pay out money or to forfeit moneys due (i.e., that involved a 'claim')." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 788 (4th Cir. 1999).

A claim of fraud under the FCA, like fraud claims generally, is subject to the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure which requires that a plaintiff "state with particularity the circumstances

7

constituting fraud or mistake." Fed. R. Civ. P. 9(b). In his pleading, therefore, Elms was required to allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison, 176 F.3d at 784.

Elms' FCA claim fails to meet the heightened standard imposed by Rule 9(b). While Elms alleges that a scheme existed between Accenture and Avanade, whereby Avanade would rebate approximately fifty percent of Accenture's payments to Avanade, Elms fails to allege with specificity the "who, what, when, where and how" of the rebate scheme. At most, Elms alleges (i) that there was a cost-plus contract with a nine and one-half percent markup, (ii) that Accenture used personnel from Avanade and paid full rates for the Avanade employees, which it passed along to the government, and (iii) that Accenture later received a rebate or credit of fifty percent or more from Avanade, which Accenture did not credit to the government. Elms, however, fails to allege specifics of any single credit or rebate and provides no detail of his conclusory allegations that Accenture engaged in fraudulent billing practices. Although Elms alleges that Accenture affirmatively misrepresented that it was Accenture's "established practice" to pay Avanade at full value for its services and that it was not getting any rebates, Elms does not attribute this alleged misrepresentation to any

8

Accenture employee or identify where or when any such representation was made.

Plaintiff submitted only one invoice (which, ironically, was signed by plaintiff) and failed to allege with particularity any alleged rebate or credit. While Elms contends that the evidence is within the possession of Accenture and the United States, this does not excuse the lack of specificity with which plaintiff has pled his FCA fraud claim. In fact, Rule 9(b) is aimed at such fishing expeditions: "The clear intent of Rule 9(b) is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed." Harrison, 176 F.3d at 789. The district court, therefore, properly dismissed plaintiff's fraud claim under the FCA.

### B.

Plaintiff also brought a claim for retaliation under the FCA, asserting that he was dismissed from the project and, subsequently, the company because he engaged in protected activity. The FCA's statutory ban on retaliation provides a cause of action for

> [a]ny employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done . . . in furtherance of an action under this section, including investigation for, initiation of,

9

testimony for, or assistance in an action filed or to be filed under this section.

31 U.S.C. § 3730(h). Courts have interpreted FCA-protected activity broadly to cover not only the filing of a qui tam suit but also a variety of actions aimed at ascertaining whether or not a fraud has been committed that would give rise to a possible FCA suit. United States ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 739-40 (D.C. Cir. 1998).

Unlike the fraud claim, a retaliation claim is not subject to the heightened pleading standard of Rule 9(b); therefore, plaintiff need only satisfy Rule 8's notice pleading requirements to survive a motion to dismiss. Fed. R. Civ. P. 8.

We conclude that plaintiff has alleged sufficient facts to survive a Rule 12(b)(6) motion to dismiss on the retaliation claim. Elms has sufficiently alleged that he suffered retaliation, i.e., his employment was terminated as a result of action taken in the course of investigating a fraud against the United States. Elms has alleged a fraudulent rebate scheme in his complaint, even if those allegations do not survive the heightened pleading standard of Rule 9. He also alleges that when he learned how Accenture was using Avanade to make a higher return than the nine and one-half percent specified in the FVAP contract, he was concerned about the legality of the rebate scheme and "expressed his misgivings" to McLaughlin, as well as

10

to the accountant assigned to the project. (JA-010). Finally, Elms alleges that he insisted on removing the Chief Technical Architect from Avanade but that before Elms could remove him, Elms himself was removed as Project Manager. When McLaughlin refused to make Elms the CTA, Elms told her that Avanade was "short-changing the government." (JA-010). Shortly after this conversation, Elms was fired. Elms has alleged that he took action in furtherance of a qui tam suit, that his employer knew of these actions, and that he was terminated as a result. These allegations are sufficient to put defendant on notice of the nature of plaintiff's retaliation claim and therefore survive dismissal under Rule 12(b)(6).

CONCLUSION

We affirm the district court's ruling that Elms' fraud claim under the FCA fails to meet the heightened pleading standard of Rule 9(b). However, we conclude that Elms has properly alleged a retaliation claim under the FCA, and therefore reverse the district court's dismissal of Elms' retaliation claim and remand this matter to the district court for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED

11